[No. 8744. Department Two. June 4, 1910.]

THE STATE OF WASHINGTON, *on the Relation of R. V. Williams, Respondent*, v. M. L. BROOKS, *Appellant*.[1]

MUNICIPAL CORPORATIONS — POPULATION — DETERMINATION — EVIDENCE—JUSTICES OF THE PEACE. It not being the duty of the Bureau of Statistics to enumerate the inhabitants of the state or its cities, its biennial report containing estimates of the population of the cities, with other general information, is not an official determination of the population of a city for the purpose of determining the number of justices of the peace to be elected therein.

JUSTICES OF THE PEACE—NUMBER ELECTED—TENURE OF OFFICE—POPULATION OF CITY—DETERMINATION. Under Rem. & Bal. Code, § 6531, providing for two justices of the peace in cities and towns, as qualified by § 6532, which provides that at the general election in 1898, and biennially thereafter, in cities of more than 5,000 inhabitants there shall be elected only one justice of the peace, two justices of the peace are to be elected in a city formerly having less than 5,000 inhabitants until it is officially determined that the city has more than that number; and such justices hold office until the next biennial election, although thereafter it was officially determined that at the time of their election the city had over 5,000 inhabitants.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered January 17, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court, in proceedings in the nature of quo warranto. Reversed.

*Burkey, O'Brien & Burkey*, for appellant.
*Porter & Powers*, for respondent.

PARKER, J.—By this action the relator seeks to be adjudged the sole justice of the peace for the city of Puyallup, to have the defendant ousted from the office of justice of the peace for Puyallup, and to recover from him the amount of

[1]Reported in 109 Pac. 211.

the salary he has received as justice from Pierce county. Upon a trial before the court, judgment was rendered in favor of the relator, from which the defendant has appealed to this court.

It will be conducive to an understanding of the materiality of the facts involved to first have before us certain constitutional and statutory provisions relating to the office of justice of the peace in °cities of this state. By section 10 of article 4, of our constitution, it is provided:

"The legislature shall determine the number of justices of the peace to be elected in incorporated cities. . . In incorporated cities or towns having more than five thousand inhabitants, the justices of the peace shall receive such salary as may be provided by law, and shall receive no fees for their own use."

Section 6531, Rem. & Bal. Code, provides generally for the number of justices of the peace in cities as follows:

"Each incorporated city in this state, together with any adjoining precincts, if any there are, lying partly within and partly without said city, shall, for the purposes of this chapter, and for fixing and limiting the number of justices of the peace to be elected in such city, be deemed and considered one precinct, and the qualified electors within the limits thereof shall, at each general election at the several polling places therein, vote for and elect two justices of the peace, and no more."

This provision is qualified by section 6532, Rem. & Bal. Code, which was enacted later, as follows:

"There shall be elected at the general election to be held in November, 1898, and biennially thereafter in cities of more than five thousand inhabitants only one justice of the peace and one constable and no more."

Section 6535, Rem. & Bal. Code, fixes the salary of justices of the peace in cities of more than 5,000 inhabitants at $100 per month. These provisions are further qualified by sections relating to cities of over 35,000 population. There does not appear to be any method provided by statute for offi-

cially determining the fact that a city has more than 5,000 inhabitants.

The facts upon which the rights of the parties to this action depend are undisputed, and so far as necessary for us to notice them, may be summarized as follows: Puyallup is, and has been for many years past, an incorporated city of the third class. At the general election of November, 1908, and at previous general elections the public officials of Pierce county have proceeded upon the assumption that the city did not have more than 5,000 inhabitants, and elections were held accordingly for two justices of the peace. At the election of November, 1908, the official ballots, prepared and furnished by the county auditor for use in the city, contained directions to the voters to vote for two persons for justice of the peace, as required by subdivision 7, section 4893, Rem. & Bal. Code, when more than one person is to be elected to any office. At that election D. A. Whitman received the highest number of votes in the city for justice of the peace, and M. L. Brooks, the appellant, received the next highest number. Upon the official count of the ballots, they were both declared duly elected, and in due course a certificate of election was issued to each of them. In January, 1909, M. L. Brooks, appellant, qualified by taking his oath of office and giving bond, the latter being approved by the board of county commissioners. On January 30, 1909, D. A. Whitman, not having qualified, notified the board of county commissioners in writing that he would not qualify, and thereupon the board entered an order appointing R. V. Williams, respondent, justice of the peace for Puyallup, in place of D. A. Whitman who had been elected and declined to qualify. On February 4, 1909, R. V. Williams, respondent, qualified by taking his oath of office and giving bond, the latter being approved by the board of county commissioners. Thereafter, and until the commencement of this action, both appellant and respondent continued to act as justice of the peace for the city of Puyallup.

On April 30, 1909, in an action in the superior court for

Pierce county, wherein appellant M. L. Brooks was plaintiff and Pierce county was defendant, respondent R. V. Williams not being a party, it was determined that Puyallup was a city having more than 5,000 inhabitants at the time of the election of November, 1908, and at all times since then, and that M. L. Brooks was justice of the peace for the city and entitled to salary of $100 per month. Since then appellant has received such salary from Pierce county. Respondent has received no salary, but has collected fees for his official services and has accounted for and paid them into the county treasury. He has also demanded a salary of $100 per month of the county commissioners, which they declined to pay him. On June 18, 1909, respondent, claiming that the city was entitled to but one justice of the peace, and that he alone was the *de jure* officer entitled to that office, commenced this action, which resulted in the judgment from which this appeal is taken.

It is admitted that the city of Puyallup did in fact have more than 5,000 inhabitants at the time of the election of November, 1908, and it is also admitted that that fact was not judicially determined in any action, nor determined by the board of county commissioners for Pierce county until April, 1909, after the qualification of appellant under his election,. and after the qualification of respondent under his appointment. We must presume, also, that the fact that Puyallup had more than 5,000 inhabitants was not determined by the county auditor; for in performing his official duty in preparing the ballots for the November, 1908, election, he proceeded upon the assumption that there were to be elected in the city two justices of the peace, and so instructed the voters. This was a part of his official duty under sections 4891, 4893, Rem. & Bal. Code. We mention this since it might be held that the county auditor could officially determine that the city had more than 5,000 inhabitants, if not otherwise officially determined, incident to his duty in calling elections and in instructing the voters how many justices were to be elected.

However this may be, the record before us negatives the idea that the auditor has ever officially determined that Puyallup has more than 5,000 inhabitants. Of course we take judicial notice of the fact that the United States census of 1900 does not show such fact, and that there has been no Federal census completed since that time.

Our attention is called by learned counsel for respondent to the published biennial report of the "Bureau of Statistics, Agriculture and Immigration" of 1907, offered in evidence evidently for the purpose of showing that the population of Puyallup had been officially determined to be more than 5,000 prior to the 1908 election, and as a basis for the contention that Whitman, in whose place respondent was appointed, was the only duly elected justice for Puyallup at that election, he having received the highest number of votes. That report was evidently prepared under authority shown by sections 8957-8963, Rem. & Bal. Code, prescribing the duties of that bureau. We find nothing in the law, however, making it the duty of the bureau to enumerate the inhabitants of the state or of its cities. While it may be desirable for the bureau, in its report, to give estimates of the population of the state, its counties, cities, etc., together with other general information, such estimates do not amount to an official determination of population. Counsel for respondent cite the case of *Times Printing Co. v. Star Publishing Co.*, 51 Wash. 667, 99 Pac. 1040, wherein this court referred to that report, and others of the bureau, as a source of general information for taking judicial knowledge of the fact that Seattle was a large city. The population of the city of Seattle was not there involved, except in a very general way. The determination of the question involved was influenced only by the fact that Seattle was, generally speaking, a large city and not a small one, and there was no question depending on the number of inhabitants of the city with any degree of certainty. We do not think that case holds that this report constitutes an official determination of the population

of the cities of the state, though it purports to state what the bureau estimates such population to be. We conclude that, prior to April, 1909, there had been no official determination of any nature of the fact that Puyallup has over 5,000 inhabitants.

It is contended by learned counsel for respondent that since the city had in fact 5,000 inhabitants at the time of the 1908 election, there was but one office of the justice of the peace to be filled at that time, and that D. A. Whitman alone was elected to that office, he having received the highest number of votes, and that upon the appointment of R. V. Williams, the respondent, in place of Whitman, respondent became the only justice of peace for the city. We cannot give our assent to this view. It cannot be possible that the going out of existence of one of these offices is dependent upon the existence of a fact, to wit, the population of the city, prior to some official determination of such fact. To hold that immediately upon the city acquiring more than 5,000 inhabitants one of the offices of the justice of the peace ceased to exist, regardless of any official determination of such fact, would be to make the existence of such office depend upon unknown facts officially determinable in the future. A city of less than 5,000 inhabitants might acquire and exceed that population by a few hundred, or even by a considerable larger number for a period of years, and the fact not be known, and no one be sufficiently interested to have the fact officially determined. Under such conditions two justices would continue to be elected, qualify and perform their usual official duties. Some one might then conceive the notion that it would be to his interest, and that he could prove, that the city had acquired 5,000 inhabitants even years before, and proceed to establish that fact by some proceeding in some official manner. Can it be possible that the very existence of a judicial office, and the validity of all the official acts of one holding such an office, was intended by our lawmakers to rest upon such a precarious foundation as this? Surely not. Yet if the contention that

the office ceased to exist at the time the city acquired the given population, regardless of the time of an official determination of that fact, and that an official determination of such fact relates back to the time when the city acquired such population, can be upheld, it would logically follow that not only the tenure by which the office is held, but the very existence of the office, might rest for years upon this unknown and unofficially determined fact.

We are of the opinion that, in the eyes of the law, for the purpose of determining the number of its justices of the peace therein, the city of Puyallup did not have more than 5,000 inhabitants at the time of the election of 1908, nor in any event until it was officially so determined in April, 1909, regardless of the real fact as to its population. From this view it necessarily follows that at that election D. A. Whitman, in whose place respondent was appointed, and M. L. Brooks, appellant, were both legally elected, not to the salary office, but to the two fee offices of justice of the peace. These were not only the offices to which both appellant and respondent were elected and appointed, but are the offices to which they both qualified, by filing their oaths and bonds, before there was any official determination that the city had more than 5,000 inhabitants. The question then is, do these two offices continue to exist after the judicial determination of the city's population in April, 1909, and until the end of the term for which appellant and respondent were elected and appointed? If the offices do so continue in existence, then it is plain that neither can cause the other to be ousted, because neither is usurping the office he holds.

Our attention is called to the case of *Ogden v. Chehalis County*, 41 Wash. 45, 82 Pac. 1095. That case involved the question of the right of a justice, in a city reaching 5,000 population after his election and before the expiration of his term, to a salary, as against the county, which question, however, we are not here concerned with. But that case also

inferentially supports the view that the two justices elected before the city acquired 5,000 inhabitants continue to hold office to the end of the term for which they are elected, even though the city acquires 5,000 inhabitants before the expiration of the term. The same may be said as to one appointed to fill such unexpired term, as the respondent was appointed in this case. We are of the opinion that this is the correct view, and that it was not the intention of the legislature to have the law work a change in the tenure of office of justices in cities during the term for which they are elected or appointed. Nor was it the intention of the legislature to have the change from two justices to one justice occur except at the end of a regular term. It will be noticed that the language of Rem. & Bal. Code, § 6632 is, "There shall be elected at the general election to be held in November, 1898, and biennially thereafter in cities of more than five thousand inhabitants only one justice. . . ;" from which we conclude that there is no office of a single justice as contemplated by this law until after the time for holding an election for that purpose has passed. Neither of these officers were elected at such biennial election in a city of more than 5,000 inhabitants, nor appointed as a successor of one so elected. The transition in such a city from two justices to one justice must have been intended by the lawmakers to occur at some certain definable time. We are unable to reach any conclusion other than that such time is at the end of a term of office next following some official determination of the fact that the city has more than 5,000 inhabitants.

Being of the opinion that both appellant and respondent are legally qualified and acting justices of the peace in the city of Puyallup, it follows that neither can be ousted, and we conclude that the judgment of the learned superior court must be reversed. This disposition of the case eliminates the question of the right of one to the compensation which may have been received by the other; and as to the compensation

either is entitled to receive from Pierce county, we are not called upon to express an opinion.

The judgment is reversed.

RUDKIN, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.