The People of the State of Illinois ex rel. Grace Nicholson, Appellee, v. Board of Trustees of the Police Pension Fund of the Village of Hinsdale et al., Appellants.

**Gen. No. 8,949.**

Opinion filed July 30, 1935. Rehearing denied September 30, 1935.

MALCOLM MECARTNEY, of Chicago, for appellants.

FRANK A. McCARTHY, JOSEPH M. SCHACHNER and WILLARD C. LINDSAY, all of Chicago, for appellee; WILLARD C. LINDSAY, of Chicago, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

This is an appeal from an order of the circuit court of DuPage county awarding a writ of mandamus

against the board of trustees of the police pension fund of the Village of Hinsdale. The parties waived a jury trial and submitted the issues of fact to the court for decision. The order directs the writ of mandamus to command said board to forthwith pay to relatrix a pension at the rate of $800 per year, payable in monthly instalments of $66.66 to commence April 29, 1931. The payments shall continue during the lifetime of said relatrix whose name said board shall place on the pension roll of the police pension fund of said village. All these proceedings are in accord with the terms prescribed in the statute governing the police pension fund in cities, villages and incorporated towns having a population of not less than 5,000 and not more than 200,000 inhabitants.

The said board relies upon seven alleged errors for a reversal of the order awarding the writ, the second of which is urged in this court and states that "There is no competent evidence whatsoever in the record to support the finding of the court that the population of the Village of Hinsdale on January 5, 1926, was 5,732." To determine this question requires an interpretation of paragraph one of section one of chapter 24 of the amended act of 1909, Cahill's St. ch. 24, ¶ 915 (par. 892, ch. 24, Smith-Hurd Rev. St.) which, by an amendment of 1919, provides for a police pension fund in cities, villages and incorporated towns in the State of Illinois having a population of not less than 5,000 and not more than 200,000 inhabitants and reads as follows: "That in all cities, villages and incorporated towns having a population of not less than 5,000 and not more than 200,000 inhabitants, said population to be determined by the United States government statistics, there shall be set apart the following moneys to constitute a police pension fund."

The claim of the relatrix as a beneficiary of the pension fund arises out of the following facts which are

not disputed by the board: John W. Nicholson, the husband of the relatrix, at the time of his resignation, January 5, 1926, was chief of police of the Village of Hinsdale, and as such a member of the regularly constituted police force of said village. He became a member of said police force in the year 1892 and thereafter continuously remained a member until May, 1908. In May, 1909, he again became a member of said police force and thereafter continuously remained a member thereof in good standing until the day of his resignation, January 5, 1926. He was a member of said police force for about 34 years, when he resigned and went to work for the village in a different capacity. He did not make application for a pension. He remained in the employ of the village until the date of his death, March 29, 1931. He was past 64 years of age at the time of his death. The relatrix, after the death of her husband, made proper application to the board for a pension, which was denied by the board on the ground that at the date of the resignation of John W. Nicholson, January 5, 1926, said village did not have a population of 5,000 inhabitants and therefore did not come under the provisions of the statute requiring villages of 5,000 inhabitants and over to establish a fund to pay a pension to policemen or their dependents, when they had served on the force for 20 years or over and had reached the age of 50 years. On April 30, 1934, there was approximately $2,500 in the pension fund of said village. For the year immediately preceding his resignation, John W. Nicholson had received the sum of $1,600 per annum as his pay as chief of police of the village.

The court further found, as a matter of fact, "that in the year 1926, on January 5th, the population of the Village of Hinsdale was five thousand seven hundred and thirty-two." The second alleged error relied upon by the board for a reversal of the order granting the

writ is directed at this finding of fact made by the trial judge.

The Village of Hinsdale did not have a policemen's pension fund and a board of trustees of such fund until October 18, 1932, after it had been determined by the United States decennial census of 1930 that the village had a population of 6,923 on April 1, 1930. There is no federal census prior to the decennial census of 1930, stating that the population of the said village was 5,000 or more.

It is conceded by counsel that in order to establish the right of the relatrix as a beneficiary of the police pension fund as provided by statute, it was incumbent upon her to prove that on January 5, 1926, the date when John W. Nicholson resigned as policeman, the village had a population of not less than 5,000 inhabitants, ''said population to be determined by the United States government statistics,'' according to the meaning and intent of the statute.

It is the contention of the relatrix that to prove the population of Hinsdale as of January 5, 1926, she was not confined to the decennial census taken by the United States Government in 1920; that by the words of the statute, ''determined by the United States government statistics,'' the published reports of the United States Census Bureau, supplemented by informal reports of such special census as have been taken, supplemented also by unpublished figures that can be taken from the existing tabulations, are competent evidence to prove the population of Hinsdale on January 5, 1926. The relatrix introduced in evidence Bulletin 138 published by the United States Department of Commerce, which has jurisdiction over the United States Census Bureau, and which the relatrix insists is a part of the United States government statistics. She urges that the method used by employees of the census bureau in compiling the bulletin to estimate the population of the

United States, the states, the territories and the cities between the decennial census, should be adopted by this court as in strict compliance with the provisions of the policemen's pension fund act. This method of estimating population will hereafter appear from the depositions of two employees of the census bureau. To prevent confusion and to present this contention of the relatrix in its single aspect, we digress at this point to say that Bulletin 138 was printed in 1918 and it does not contain any estimate of the population of Hinsdale at any time, being confined to cities having 8,000 or more population on July 1, for the years 1910 to 1917 inclusive. There are no informal reports of a special federal census of Hinsdale at any time; nor any unpublished figures in the form of United States statistics that can be taken from existing tabulations of the United States Census Bureau which show the population of Hinsdale· on January 5, 1926. The contention of relatrix in this behalf rests upon the premise that as the United States Census Bureau employs a method by which the population of cities is estimated between the decennial census by using the decennial census as a factor, this court should adopt that method and thereby determine the population of Hinsdale to have been over 5,000 inhabitants on January 5, 1926, in accordance with the words of the statute, "determined by the United States government statistics."

The population of Hinsdale as shown by the Federal Decennial Census of 1910, 1920 and 1930, respectively, and the dates as of which such enumerations were made are: April 15, 1910, 2,451; January 1, 1920, 4,042; April 1, 1930, 6,923.

The following evidence was introduced by the relatrix over the objection of the board: The depositions of Dr. Leon Truesdell and Clarence E. Batschelet, employed as statistician and geographer respectively in the federal census bureau.

Dr. Truesdell and Mr. Batschelet both testified that there were not in existence in the year 1926 any United States Government statistics by which the population of the Village of Hinsdale could have been determined as of that date, other than the Decennial Census of 1920 and prior censuses; that there are not in existence any United States Government statistics which record the population of Hinsdale as of any date between the taking of the 1920 and 1930 Federal Censuses; that neither they nor the Bureau of the Census have ever determined the population of the Village of Hinsdale as of January 5, 1926, or as of any other dates except the dates upon which the federal decennial censuses were taken; and that no federal census prior to that of 1930 showed the population of Hinsdale to be 5,000 or more inhabitants.

Mr. Batschelet further testified that while he could not determine the population of Hinsdale as of January 5, 1926, by the United States Government statistics, he could make an estimate of such population based upon the assumption that the population of the village increased in even annual amounts at the average annual rate indicated either by the 1920 and 1930 federal censuses (called an intercensal estimate), or by the 1910 and 1920 federal censuses (termed a post census estimate). By this method Mr. Batschelet (on March 8, 1934) made an intercensal estimate of the population of Hinsdale as of January 5, 1926, by computing the average annual increase in the population of the village from the respective dates of the taking of the 1920 and 1930 censuses and applying such average to the period from the date of the taking of the 1920 census to January 5, 1926, and by then adding such estimated increase for that period to the 1920 census figure. On this basis Mr. Batschelet estimated the population of Hinsdale to have been 5,732 on January 5, 1926.

Mr. Batschelet further testified that if an estimate of the population of Hinsdale as of January 5, 1926, were to have been made prior to the return of the 1930 federal census but subsequently to the 1920 census, such estimate would have to have been computed by determining the average annual increase in the population of the village from the respective dates of the taking of the 1910 and 1920 censuses, and applying such average to the period from the date of the taking of the 1920 census to January 5, 1926, and by then adding such estimated increase for that period to the population as determined by the 1920 census. Estimating the population of Hinsdale as of January 5, 1926, by this method on the basis of the 1910 and 1920 censuses, such estimated population was 4,864. Mr. Geo. E. Ruchty testified that he was a resident of Hinsdale and had lived in Fullersburg nearly all of his life, and lived there at the time it was annexed to Hinsdale; that he was 67 years of age; that during the period from 1920 to 1929 the Village of Hinsdale had grown in population somewhat more than previously thereto; that the village has never had any great influx; it has never been a boom town; but as to just how much the growth had been he could not tell, except to say that there was a natural and steady growth between the years 1920 and 1930, more or less; and that he could not tell whether between the years 1920 and 1930 there was any one or two particular years that had a larger increase than any other years.

It was stipulated (subject to respondents' objections as to competency, relevancy and materiality) that during the intervening period from the date of the taking of the 1920 federal census to January 5, 1926, there were four annexations to the Village of Hinsdale. Mr. Batschelet testified that there are no statistics in possession of the government showing the number of in-

habitants residing within any territory annexed to the Village of Hinsdale since the 1920 decennial census.

As a matter of common knowledge it is usually and generally understood that the population of a country or a section thereof is determined by an enumeration or census of its inhabitants. It has been judicially decided that if a statute classifies cities or counties according to population for the purpose of exercising governmental authority or power, and the statute does not prescribe by what method the population is to be determined, an official census is the only basis for the classification. *Town of Maysville v. Smith,* 132 Ga. 316, 64 S. E. 131; *In re Assessment, etc., City of Passaic,* 54 N. J. L. 156, 23 Atl. 517; *State v. Brooks,* 58 Wash. 648, 109 Pac. 211; *Adams v. Elwood,* 176 N. Y. 106, 68 N. E. 126. This court does not pass upon the question of the constitutionality of statutes; however, as pertinent to the construction of the statute now under consideration, it may be broadly stated that statutes which are applicable to cities of a certain classification as determined by their populations are general and not special legislation, and are valid. When the legislature enacted the Policemen's Pension Fund Act and made it applicable to cities and villages having a population of not less than 5,000 and not more than 200,000 inhabitants, it was dealing with a subject where accuracy and dependability are essential, and the legislature intended to state a method of determining the population of cities and villages which is official, definite and dependable. The statute should be given such a construction.

The words of the statute, "the population to be determined by the United States government statistics," standing alone, are vague and uncertain. The word "statistics," we are of the opinion, must be held to mean figures or numbers, facts, ascertained by an official enumeration or a government census.

We do not find any cases where the exercise of governmental powers is dependent upon population in which it is not held that population is to be determined by an official census. We are of the opinion that it is a safe and sound proposition to hold that if the legislature grants the right to exercise governmental functions to cities and villages having a requisite number of inhabitants, and the method of determining such number of inhabitants, or population, is not clearly fixed or pointed out in the empowering statute, then the population is to be determined by a method which has been adopted as a policy by the State. This must have been in the minds of the lawmakers when the statute under consideration was adopted. The meaning of words of the statute being uncertain and the policy of the State to be ascertained, we are not confined to the exact words of the statute. Under the established rules of statutory construction we consider other statutes which are not only *in pari materia* but also those which are upon cognate subjects. *People v. Barnett,* 319 Ill. 403.

The Policemen's Pension Fund Act empowers cities and villages, having the requisite populations, to set aside moneys to constitute a police pension fund; which comprises three-fourths of all money received for licenses upon dogs; all moneys received for special detail of police officers; 10 per cent of all fines collected for violation of city ordinances. . . . Also, "The city council or board of trustees of any such city, village or incorporated town shall levy a tax annually of three-twentieths of a mill on the dollar on all taxable property of such city, village or incorporated town," etc. Cahill's St. ch. 24, ¶ 915 (sec. 890, ch. 24, Smith-Hurd Rev. St.). The Village of Hinsdale is incorporated under the provisions of the general Incorporation Act providing for the incorporation of cities and villages. The general Incorporation Act is the charter

of the village. The Policemen's Pension Fund Act is an amendment and a part of the charter of the Village of Hinsdale. *L'Hote v. Village of Milford,* 212 Ill. 418, 421; *People v. Wright,* 70 Ill. 388; *People v. Briggs,* 50 N. Y. 553. Cahill's St. ch. 24, ¶ 242 (ch. 24, section 136, Smith-Hurd Ill. Rev. St. of the general Incorporation Act) providing for the incorporation of cities and villages provides as follows: "Whenever in this act any provision thereof is based upon the number of inhabitants, (the number of inhabitants) of the city or village shall be determined by reference to the latest census taken by authority of the United States or this State, or of such city or village; and it shall be the duty of the secretary of state, upon the publication of any State or United States census, to certify to each city or village the number of inhabitants, as shown by such census. Any city or village may, by ordinance, provide for the taking of a census of the population thereof, in order to determine the number of such population for any and all purposes of this act. And the several courts in this State shall take judicial notice of the population of any city or village, as the same may appear from the latest Federal, State, city or village census so taken."

There are many statutory acts which by their provisions are applicable only to cities and villages having the number of inhabitants as designated in the acts and which do not state or indicate the method by which the populations of such cities and villages are to be determined. "Classification with reference to population is of frequent occurrence in legislation." *Mathews v. City of Chicago,* 342 Ill. 120, 129. If the provisions of these acts are not construed with the general Incorporation Act providing for the incorporation of cities and villages (the charter of the city or village), there is no method which the State has adopted to determine the populations of cities and villages of the State. The meaning of a statute is not determined by

judicial fiat, but the legislative intent is to be found if possible in the existing statutes. We are of the opinion that the State has adopted as a policy a method of determining the populations of cities and villages as prescribed in the said general Incorporation Act. Construing said general Incorporation Act and the Policemen's Pension Fund Act, together, we have come to the conclusion, and so decide, that by the words of the statute, "the population to be determined by the United States government statistics" mean "determined by reference to the latest census taken by authority of the United States." (*Town of Maysville v. Smith, supra.*)

We are also of the opinion that estimates of the populations of cities of the country, although made by employees of the United States Census Bureau, and published in tabulated form by the United States Department of Commerce, are not statistics. In the case of *State v. Brooks, supra,* the report of the "Bureau of Statistics Agriculture and Immigration" of the State of Washington, published in 1907, was offered in evidence to prove that the population of the town of Puyallup had been officially determined to be more than 5,000 in 1908. The court in that case said: "While it may be desirable for the bureau, in its report, to give estimates of the population, of the state, its counties, cities, etc., together with other general information, such estimates do not amount to an official determination of population."

The contention of the relatrix that the population of Hinsdale exceeded 5,000 inhabitants on January 5, 1926, rests upon an estimate of the population of the village on that date. The estimate is based upon a computation which assumes an increase in population of the village from the date of the United States census of 1920 to Jan. 5, 1926, at the rate of the average increase in population as shown by the United States census of 1920 to 1930. This is speculative as it was

possible for the increase of population of Hinsdale as shown by such census of 1920 and 1930 to have all occurred subsequent to January 5, 1926.

The order awarding the writ of mandamus is reversed for the reason herein stated.

*Reversed.*