(No. 21817.— ▌▌▌▌▌▌▌

Maurice Fox *et al.* Appellants, *vs.* William S. Maxwell *et al.* Appellees.

*Opinion filed June 22, 1933—Rehearing denied October 6, 1933.*

H. J. Thal, for appellants.

William H. Sexton, Corporation Counsel, Thomas J. Courtney, State's Attorney, Joseph J. Sullivan, Irvin Rooks, Louis H. Geiman, Maloney & Wooster, and Langworthy, Stevens, McKeag & McCornack, (B. F. Langworthy, and David B. Maloney, of counsel,) for appellees.

Mr. Chief Justice Orr delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county sustaining demurrers to an amended and supplemental bill of complaint denying leave to file additional amendments thereto and dismissing it for want of equity. The amended and supplemental bill was filed by Maurice Fox and others as complainants against William S. Maxwell and others as officials of the village of Beverly, Orlo S. Turner, the Krenn & Dato Construction Company, Joseph B. McDonough as county treasurer and *ex-officio* county collector of Cook county, Robert M. Sweitzer, county clerk of Cook county, the city of Chicago, and Edward J. Kaindl, city collector of the city of Chicago, as defendants. The amended and supplemental bill will be referred to as the bill.

In substance, the bill alleges that complainants were the owners of and parties interested in certain lots in Harold J. McElhinney's First addition to Southtown, in Cook county, later included in the village of Beverly and now annexed to Chicago; that they filed this bill on their own behalf and on behalf of other lot owners similarly situated; that complainants purchased the properties under contracts which provided that in addition to the purchase price they were to pay all unpaid installments of any special assessments theretofore legally levied; that in the contracts it was agreed that the seller, the West Englewood Trust and Sav-

ings Bank, as trustee, reserved the right to pave the streets fronting on, contiguous to or adjoining the premises and that the cost should be paid by the purchasers *pro rata;* that on August 14, 1930, complainants received notice that a special assessment had been levied and confirmed against their lots by the village of Beverly in proceedings had in the superior court of Cook county; that the lots were assessed in the name of H. J. McElhinney, who had paid the general taxes on them for the preceding year in which taxes were paid prior to the levy of such special assessment; that complainants had no notice or knowledge of said proceedings or the levy of the assessment therein or the confirmation thereof or the alleged organization of the village of Beverly until after receipt of notice of the special assessment; that they had no means of obtaining such knowledge because of matters subsequently alleged which were designed to prevent them from obtaining such information; that upon receipt of the notice, complainants, upon investigation, learned that in July, 1928, one of the defendants, William S. Maxwell, a beneficiary under a trust agreement by which title to the subdivision was held by the West Englewood Trust and Savings Bank as trustee, entered into a contract with Pronger Bros., paving contractors, for the construction of the paving improvement; that in August, 1928, the contractors commenced construction of the improvement under that contract and proceeded with the construction until November, 1928, at which time they had constructed approximately twenty-five per cent of the pavement and ninety per cent of the curbing; that meanwhile, on July 16, 1928, Maxwell filed a petition in the office of the clerk of the county court of Cook county for the organization of a village to be known as the village of Beverly, comprising said subdivision and other property; that the allegations in such petition were false and fraudulent; that the territory described in the petition did not contain one hundred inhabitants, as provided by law and as alleged

in the petition; that the petition was not signed by fifteen legal voters residing within the limits of the proposed village, as alleged therein and as required by law, but was signed by twenty-four persons, none of whom were *bona fide* legal voters resident within the limits of said territory but were laborers employed by a sewer contractor doing work in the territory and whose residences were outside of the territory; that after the filing of the petition for the organization of the village of Beverly, and some time prior to July 31, 1928, the date on which the election to organize the village was to be held, Maxwell caused a large number of persons, so-called "floaters," to be collected and housed them in portable garages or shacks located on some of the lots in the rear of his real estate office in the territory, for the purpose of having such persons vote at the election of officers in the proposed village; that said persons were boarded and fed in the basement of Maxwell's real estate office; that the purported election for the organization of the village was held July 31, 1928, and that at such election the persons so imported into the territory voted and that thirty-three votes were cast at the election in favor of the organization of the village; that as a result of the election an order was entered by the county judge purporting to organize the village; that on September 10, 1928, on petition filed, an order was entered by the county court calling an election for village officials; that a nominating petition for elective village officers was filed, wherein Maxwell was nominated for president, and his wife, father-in-law and mother-in-law and certain of his business associates and employees were nominated as members of the board of trustees and village clerk; that the election for these officials was held October 2, 1928, with twenty-four votes cast, most of them by persons temporarily housed in the territory; that on October 4, 1928, an order was entered by the county court declaring the election of the village officials; that shortly thereafter the officers so elected adopted

resolutions to initiate proceedings under the Local Improvement act for the paving improvement then being constructed by Pronger Bros. under their contract with Maxwell; that since the total cost of the proposed improvement exceeded $200,000 it was necessary to publish the ordinance for the proposed improvement, and that in order to prevent public knowledge of the various proceedings which had taken place in the organization of the village and to prevent the complainants from learning of the proposed improvement the village officers published the ordinance in a small local newspaper published in the north end of Cook county approximately thirty miles from the proposed improvement, which newspaper had no circulation in the village of Beverly or in that vicinity; that subsequent proceedings were had which resulted in the assessment of all the lots in the subdivision, including those of complainants, for the benefits supposed to be derived from the improvement; that the assessment roll included the cost of that part of the paving which had been constructed by Pronger Bros. prior to the passage of the ordinance; that some owners of lots learned of the pendency of the assessment proceedings and filed objections thereto, which were sustained; that complainants did not learn of the proceedings and therefore could not file objections thereto; that the village called for bids on the proposed work; that two bids were received, one from Francis Anderson in the sum of $413,993.30 and one from a purported Orlo S. Turner in the sum of $386,974.30, and that the contract was awarded to Turner, including that portion already constructed by Pronger Bros.; that the bid in the name of Turner was a fictitious bid, as he was none other than Maxwell; that Turner assigned his purported contract to the defendant the Krenn & Dato Construction Company, and that the latter thereupon paid to Maxwell, under the name of Orlo S. Turner, approximately $100,000; that the Krenn & Dato Construction Company completed the construction of that part of the improvement which remained

uncompleted by Pronger Bros. under its private contract with Maxwell; that the construction company knew the special assessment proceedings were fraudulent, illegal and void; that it received the vouchers and bonds for the construction of the improvement and still owns them, and that the attempts to collect the illegal assessment are being made solely for the benefit of the construction company.

The bill alleged that the proceedings for the organization of the village and the special assessment proceedings for the paving system were fraudulent and constituted a conspiracy between Maxwell and other defendants for the purpose of illegally assessing complainants' property for moneys illegally expended; that all the matters above referred to were conducted by Maxwell and other defendants so as to suppress and conceal all information from complainants; that the village collector failed to send out any notices of such assessment until after the confirmation of the certificate of cost and completion, so that the complainants had no knowledge of the existence of the proceedings and were unable to file any objections to confirmation or as to its legality. The bill further alleged that in November, 1930, the territory of the village of Beverly was annexed to the city of Chicago pursuant to an election and that it is now within the jurisdiction of the city; that collection of such special assessment has been turned over to the city collector of the city of Chicago and that the latter has been attempting to enforce collection of said assessment. After alleging the necessity therefor, complainants prayed for a temporary injunction restraining the county treasurer from selling any of the lots returned delinquent by the city collector for non-payment of any of the installments of the assessment; that the proceedings for the special assessment may be declared fraudulent and void and that the order of the superior court confirming the assessment be vacated; that if upon a hearing it shall be found that the property of complainants is liable in any way to

pay a portion of the cost of the improvement, then a fair and equitable assessment for the cost thereof be made but not to exceed the amount of the benefits, etc.

On the hearing of the demurrers to the bill, complainants sought leave to file further amendments. The trial court denied leave to file the proposed amendments, and in the view we take of the case it is unnecessary to set them forth. The trial court sustained the demurrers to the bill and entered a decree dismissing the bill for want of equity.

The bill seeks to attack collaterally the legality of the organization of the village of Beverly and also the validity of the judgment of confirmation of the special assessment. The rule is well settled that the validity of the proceedings for the incorporation of a municipal corporation cannot be inquired into on a bill to enjoin the collection of a special assessment levied by the municipality. (*Village of Nunda* v. *Village of Chrystal Lake,* 79 Ill. 311; *People* v. *Ellis,* 253 id. 369; *Crystal Lake Park District* v. *Consumers Co.* 313 id. 395.) So much of the bill, therefore, as constitutes an attack upon the legality of the organization of the village was bad and the demurrer was properly sustained in that respect. The remainder of the bill is devoted to an attack upon the judgment of confirmation of the special assessment. Such a judgment is not subject to collateral attack except upon a showing that the court lacked jurisdiction to enter it, and such lack of jurisdiction must appear on the face of the record. (*Meehan* v. *Granite City Park District,* 347 Ill. 364; *Cosgrove* v. *City of Chicago,* 235 id. 358; *Sumner* v. *Village of Milford,* 214 id. 388.) No such showing was made in this case.

Since in this proceeding the corporate existence of the village cannot be challenged, it appears from the bill that the special assessment was levied pursuant to an ordinance of the village and pursuant to its petition filed in the superior court of Cook county and that a judgment confirm-

ing the assessment was duly entered by the court. Special assessment proceedings are purely statutory, and this court, upon the facts alleged, cannot enlarge or diminish the provisions of the Local Improvement act in order to afford retroactive relief thereunder, however meritorious the points raised might have been if presented to the county court in apt time. Nothing upon the face of the record indicates that the county court lacked jurisdiction, and its judgment was therefore *res adjudicata* of all objections and questions which were raised or might have been raised. *Meehan* v. *Granite City Park District, supra; Martin* v. *McCall,* 247 Ill. 484.

The decree of the circuit court dismissing the bill for want of equity is therefore affirmed. *Decree affirmed.*