THE PEOPLE *ex rel.* CLIFFORD JOHNSON *et al.*, Petitioners-Appellants,
*v.* THE CITY OF WAUKEGAN *et al.*, Respondents-Appellees.

Second District (2nd Division) No. 74-293

Opinion filed February 6, 1976.

Howard R. Slater and Paul E. Slater, both of Chicago, for appellants.

John F. Grady, of Waukegan, for appellee Chicago Title & Trust Company.

John E. Schultz, of Waukegan, for appellee City of Waukegan.

Sidley & Austin, of Chicago, for appellees Telegraph-120 Corporation, Lake-hurst Properties, Inc., Carson International, Inc., Carson, Pirie, Scott & Company, and Wieboldt Stores, Inc.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellee First National Bank of Chicago.

Jenner & Block, of Chicago, for appellees Corporate Property Investors and Teachers Insurance & Annuity Association of America.

Pedersen & Houpt, of Chicago, for appellees La Salle National Bank, Chicago Title & Trust Company, and Lakehurst Development Company.

Donald M. Lonchar, Jr., of Lonchar & Nordigian, of Waukegan, for appellee Norinco of Illinois, Inc.

Jack Hoogasian, State's Attorney, of Waukegan, for *amicus curiae.*

Mr. JUSTICE DIXON delivered the opinion of the court:

The petitioners in September 1973 filed a petition in the Circuit Court of Lake County seeking leave of court to file a petition in quo warranto in order to challenge the right of the City of Waukegan to exercise jurisdiction over land involved in the annexation of certain territory containing the Lakehurst Shopping Center. Respondents moved to dismiss on the grounds that any action was barred by limitations and laches and that petitioners lacked standing. The trial court denied leave to file and petitioners appeal.

On August 4, 1969, the City of Waukegan passed an ordinance, by virtue of which it purported to annex certain lands lying west of the city limits. The annexation was divided into seven parcels of land each of which is fully described in the ordinance. The second parcel of land described had previously been claimed under a 1961 ordinance by the City of Park City. On September 19, 1968, Park City passed an ordinance which purported to disconnect this parcel of land.

The land described in Parcel 2 of Waukegan's annexation (and Park City's disconnection) includes a portion of the land underlying U.S. Highway Route 41; specifically, that portion of Route 41 lying south of Belvidere Road to the center line of 14th Street. This piece of land was the subject of an annexation by the City of North Chicago on January 20, 1958. The North Chicago annexation was attacked by the State's Attorney of Lake County in a quo warranto proceeding. That case was dismissed for want of prosecution on January 31, 1961, before any asserted claim by either Park City or Waukegan to the land herein in question.

Chronologically restated:

| | |
|---|---|
| January 20, 1958 | North Chicago annexes stretch of U.S. 41, |
| January 31, 1961 | quo warranto dismissed, |
| October 9, 1961 | Park City annexes same, |
| September 19, 1968 | Park City disconnects, |
| August 4, 1969 | Waukegan annexes same. |

None of the other six parcels of land which Waukegan purported to annex on August 4, 1969, are contiguous to Waukegan unless the annexation of the relevant portion of U.S. Route 41 is valid. If that annexation is not valid, then parcels 1, 3, 4, 5, 6, and 7 lack contiguity with Waukegan and cannot be annexed by Waukegan.

The petitioners herein are residents of Lake Bluff and Libertyville, landowners and taxpayers of Lake County but not of any of the municipalities involved. On August 20, 1973, they requested Attorney General Scott and State's Attorney Hoogasian to attack the Waukegan annexation by a quo warranto proceeding. Both refused. The petitioners thereafter filed their petition for leave of court to file a petition in quo warranto in order to challenge the annexation by Waukegan.

The petitioners alleged that the annexation by Waukegan was invalid in multiple respects and that Waukegan was, therefore, unlawfully asserting jurisdiction over the land involved. Specifically, they alleged invalidity on the grounds that:

"1. Parcel 2 of the annexation was within the municipality of North Chicago and, therefore, could not be annexed by either Park City or Waukegan due to Illinois Revised Statutes, 1961, as amended, Chapter 24, sec. 7—1—1.

2. In any event Park City did not properly annex the land in that the requirements of Illinois Revised Statutes, Chapter 24, sec. 7—1—2 were not met. There was no showing whatsoever that Park City had obtained the consent of the governing authority of the Department of Public Works and Buildings with regard to a highway annexation.

3. Even if Park City did properly annex the land, it did not properly disconnect it in that owners of land and electors of the territory never petitioned for disconnection nor formally evidenced their desire to be disconnected from Park City as is required by Illinois Revised Statutes, Chapter 24, sec. 7—1—24.

4. Even if Park City did properly annex and disconnect the land, the annexation by Waukegan was defective in that it did not adhere to the applicable Illinois Statutes in the following respects:

a) That the land involved in the annexation of Parcel 2 was in excess of ten (10) acres and was owned by the 1st National Bank of Chicago as Trustee (the state has a perpetual easement for highway purposes) the consent of which was never obtained rendering the annexation violative of Illinois Revised Statutes, 1969, Chapter 24, sec. 7—1—2.

b) That the annexation was not requested by the Petition of residents and landowners of Parcel 2 nor was it consented to by a vote of the electors residing in Parcel 2, thereby violating Illinois Revised Statutes, 1961, as amended 1965, Chapter 24, sec. 7—1—2.

c) That in any event, Waukegan could not annex that which was already part of the City of North Chicago, pursuant to Illinois Revised Statutes, 1961, as amended, Chapter 24, sec. 7—1—1.

5. That for all of the foregoing reasons Parcel 2 was never properly annexed to Waukegan and that the annexation of Parcels 1, 3, 4, 5, 6 and 7 are, therefore, without contiguity with Waukegan, and as a result, Illinois Revised Statutes, 1961, as amended, Chapter 24, sec. 7—1—1 voids the Waukegan annexation."

Finally, petitioners alleged that Waukegan is currently collecting municipal retailer's occupation taxes from enterprises located within the territories which Waukegan purports to have annexed. If these enterprises are deemed not to be within Waukegan, then these taxes would be paid to the County of Lake. This additional tax revenue would either lower the real estate taxes which the petitioners would pay or in the alternative make it possible for the county to render better and more services to them while keeping their taxes at the same level.

The prize (*i.e.*, sales tax receipts) is about $800,000 a year.

The statute of limitations with reference to contesting annexations, as set forth in the Cities and Villages Act (Ill. Rev. Stat. 1973, ch. 24, par. 7—1—46) states:

"Neither the People of the State of Illinois nor any person, firm or corporation, public or private, nor any association of persons shall commence an action contesting either directly or indirectly the annexation of any territory to a municipality unless initiated within one year after the date such annexation becomes final or within one year of the effective date of this amendatory Act of 1965 whichever date occurs latest. This amendatory Act of 1965 shall apply to annexations made prior to the effective

date of the Act as well as those made on or after the effective date. Where a limitation of a shorter period is prescribed by statute such shorter limitation applies and the limitation set forth in this section shall not apply to any annexation where the judge, body or officer annexing the territory did not at the time of such annexation have jurisdiction of the subject matter."

Petitioners argue that the one-year limitation contained in the above act does not apply to this case, because the City of Waukegan lacked jurisdiction to annex the territory in question. They base their argument upon the proviso in the statute that "the limitation set forth in this section shall not apply where the judge, body or officer annexing the territory did not at the time of the annexation have jurisdiction of the subject matter."

The court in *People ex rel. City of Des Plaines v. Village of Mount Prospect*, 29 Ill. App. 3d 807, 814, 331 N.E.2d 373, 378, construing the statute, stated, "* * * we are of the opinion that the legislature intended that an annexation ordinance should be voidable within one year of the date it becomes final. Should an annexing municipality be challenged in quo warranto within the 1-year period, it would have the affirmative burden of proving that all the elements of its annexation were proper, unless the absent element concerned a minor directory matter which is not required for a valid annexation. [Citation.] If the annexation ordinance should be attacked in quo warranto after the 1-year period elapses, the only matter which could be raised would be that the ordinance was void *ab initio* for want of subject matter jurisdiction."

In the instant case if the City of North Chicago has no territorial jurisdiction of the portion of U.S. 41 involved then the statute of limitations will apply.

In 1958 when the city of North Chicago purportedly annexed this portion of U.S. Route 41, the only land annexed was the highway itself, from Buckley Road on the south to Belvidere Road on the north, a distance of almost three miles. This portion of Route 41 was not adjacent to nor parallel with the northern boundary of North Chicago, but was simply a narrow strip running perpendicular to the northern boundary. Under these circumstances, the purported annexation by North Chicago was clearly void under the prohibition against "strip" annexations announced in *People ex rel. Adamowski v. Village of Streamwood*, 15 Ill. 2d 595, 600; *People ex rel. Village of Worth v. Ihde*, 23 Ill. 2d 63, 69; and followed by this court in *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge*, 81 Ill. App. 2d 203, 207. There can be no justification for the annexation of territory in the

absence of statutory authorization therefore, and when there is no such authorization, an ordinance purporting to annex territory is a nullity. *People ex rel. Universal Oil Products Co. v. Village of Lyons*, 400 Ill. 82, 87.

Petitioners argue that this void act of the city of North Chicago in 1958 was validated retroactively when the quo warranto action attacking the annexation was dismissed for want of prosecution on January 30, 1961. They base this contention upon the holding of this court in *People ex rel. Village of Lake Bluff v. City of North Chicago*, 5 Ill. App. 3d 142. Petitioners read that case to mean that the dismissal for want of prosecution was res judicata. We do not agree with petitioners' contention. The issues in that case were (1) the statute of limitations, and (2) res judicata. On page 147 of the *Lake Bluff* opinion it was pointed out that the factual situation in the *Loves Park* case cited therein terminated in an adjudication on the merits as opposed to dismissal for want of prosecution. The court in the next paragraph went on to state, "The plaintiff does not seek to justify a lapse of 17 months for attacking the annexation of the Doney property, or the lapse of more than 10 years in . questioning the annexations of the U.S. Government properties. * * * we conclude that the trial court * * * *properly held that this suit was barred by the statute of limitations.*" (Emphasis supplied.) Further, in the case of *Flynn v. Stevenson*, 4 Ill. App. 3d 458, 461, the same court discussed the *Lake Bluff* case and stated, "* * * we held that the quo warranto suit was barred by the statute of limitations * * *."

Prior to the adoption of Supreme Court Rule 273 effective January 1, 1967, a dismissal for want of prosecution was not res judicata. (23 Ill. L.&Pr. *Judgments* §328 (1956).) It was only an involuntary non suit, not an adjudication on the merits of the case or in itself, a bar to a further suit on the same issues. *Casillas v. Rosengren*, 86 Ill. App. 2d 139, 143; *Branom v. Miller*, 25 Ill. App. 2d 94, 96; 46 Am. Jur. 2d *Judgments* §505 (1969).

The North Chicago annexation here was void *ab initio* and remained so. It could not prevent a valid annexation by Park City.

■■ Although the petitioners themselves are collaterally attacking the validity of the Park City annexation of 1961 by invoking the North Chicago annexation of 1958 they contend that the validity of the North Chicago annexation cannot be raised in this proceeding. It is true that as a general rule the validity of the annexation of lands to a municipality cannot be attacked collaterally. (*People ex rel. McCarthy v. Firek*, 5 Ill. 2d 317, 324; 8 Ill. L.&Pr. *Cities, Villages, etc.* §43 (1954).) More precisely stated, where there is authority in law for a municipal corpora-

tion (or annexation) the organization of the people of a designated territory as such a corporation (or annexation) under color of delegated authority, *which is followed by a user in good faith of the governmental powers incidental thereto,* will be recognized by the law as a municipal corporation de facto, even though the corporation (or annexation) cannot, because of failure to comply with applicable statutory requirements, be said to exist de jure. This is known as the doctrine of de facto municipal corporations. (*Emery v. Hennessy,* 331 Ill. 296, 303; 8 Ill. L. &Pr. *Cities, Villages, etc.* §§18 and 43 (1954).) A de facto municipal corporation (or annexation) is not subject to collateral attack (*Village of Catlin v. Tilton,* 281 Ill. 601, 603; *Fox v. Maxwell,* 353 Ill. 172). In tax proceedings where the municipality makes its first attempt to extend its franchise over the objector's property there has been collateral attack. (*People ex rel. Rice v. McKinnie,* 277 Ill. 342, 344; *People ex rel. Seiler v. Calloway,* 344 Ill. 488.) In the instant case there was no allegation that North Chicago proceeded to use its corporate franchise and exercise corporate powers over U.S. Route 41. If there is no user and thus no de facto annexation the annexation may be collaterally attacked. (*Payson v. People ex rel. Parsons,* 175 Ill. 267, 273; *People ex rel. Warren v. York,* 247 Ill. 591, 595; *People ex rel. Seiler v. Calloway,* 344 Ill. 488, 493; *cf. People ex rel. James v. Chicago, Burlington and Quincy R.R. Co.,* 231 Ill. 463, 466.) Here North Chicago never had the power to legally annex the disputed stretch of Route 41 and it never devoted it to municipal use. No presumption of legality could arise. *Cf. Cleveland, C., C. & St. L. Ry. Co. v. Dunn,* 63 Ill. App. 531, 532.

We believe the rule in Illinois to be as stated in 56 Am. Jur. 2d *Municipal Corporations* §73 (1971);

"* * * where there is no color of legal authority to which the proceedings may be related, other facts such as laches or estoppel not intervening, the acts of annexation being wholly void and no de facto corporation over the additions having come into existence, the proceedings may be questioned by collateral action."

Our view of the case makes it unnecessary to consider whether or not petitioners had standing.

For the above reasons the judgment of the trial court is affirmed.

Affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.