IN THE MATTER OF THE APPLICATION TO CONFIRM AN ASSESSMENT FOR THE CONSTRUCTION OF A SEWER IN THE CITY OF PASSAIC.

1. The "Act to provide for a board of assessors in cities of the third class," passed May 12th, 1890, is a general act within the meaning of pl. 11, § 7, art. IV., of the constitution. Its title gives sufficient expression of its object within the requirement of pl. 4, § 7, art. IV., of the constitution.

2. The "Act for the classification of cities of this state, for the purposes of municipal legislation in relation thereto" (*Rev. Sup., p. 506*), in distinguishing classes of cities by population, means population as determined by an official enumeration officially promulgated.

3. By a supplement thereto (*Pamph. L.* 1891, *p.* 306), the official enumeration becomes applicable ninety days after promulgation.

4. Officers of a city, appointed under laws valid and applicable to it, as a city of a lower class, will not cease to be officers by the mere transition of the city to a higher class; they may perform the functions and exercise the powers pertaining to their offices until, under laws applicable to the class into which the city has passed, others take their places.

---

Application was made to the Passaic Circuit for the confirmation of a report of an assessment for the construction of a sewer in the city of Passaic, made by the board of assessors of that city.

The board of assessors was appointed and the application was made under the "Act to provide for a board of assessors in cities of the third class," passed May 12th, 1890. *Pamph. L., p.* 327.

At the hearing of the application, a party interested in the assessment objected to the confirmation on the following grounds:

*First.* That the act under which the said assessment is imposed is unconstitutional because it is special legislation, the act in question being applicable only to third class cities.

*Second.* That the object of the act is not sufficiently expressed in its title, in so far as the object relates to awards for lands taken and the assessment of damages and benefits.

*Third.* That at the time of the adoption of the provisions of said act, the city of Passaic was not a city of the third class and, therefore, could not adopt the provisions of the same.

The following facts were laid before the Circuit Court. On November 17th, 1890, the city council of Passaic passed a resolution to adopt the act of May 12th, 1890, for that city. On March 19th, 1891, the same council passed an ordinance creating a board of assessors pursuant to that act.

The population of Passaic, by the United States census of 1880, was six thousand five hundred and thirty-two; by the state census of 1885, was eight thousand three hundred and twenty-six; and by the United States census of 1890, was thirteen thousand and twenty-eight. The population, by the last-named census, was officially announced on April 17th, 1891. The figures had been previously given out from the census office, in response to private inquiries, as early as March 10th, 1891, but the official bulletin was not issued until April 17th, 1891.

The questions presented by these objections have been certified to this court for an advisory opinion.

Argued at November Term, 1891, before Justices SCUDDER and MAGIE.

For the Speer Wine Company, *Thomas M. Moore.*

For the city of Passaic, *John W. Griggs* and *George P. Rust.*

The opinion of the court was delivered by

MAGIE, J.   The authority of the board of assessors of the city of Passaic to make the assessment which the Circuit Court was asked to confirm, is assailed, in the first place, upon the ground that the act, under the provisions of which the city had created the board and taken the proceeding to assess, was wholly void.

This contention is put, first, upon the ground that the act, while obviously regulating the internal affairs of the municipalities upon which it operates, is local and special, because its operation is confined to cities of the third class.  It is claimed that it is thus obnoxious to the prohibition of pl. 11, § 7, art. IV., of the amended constitution.

To determine the question raised by this objection, it is necessary to consider the purpose of the legislation and the municipalities to which it is applied.  For legislation, the purpose of which is reasonably appropriate to the municipalities on which it operates and inappropriate to all other municipalities, is, within the meaning of the constitutional clause in question, general, and not local or special, legislation.

The purpose of this act, briefly stated, is to permit any of the cities on which it operates to create a permanent board of five persons to perform the duties of assessing property for taxation, and also of making assessments of damages and benefits for local improvements.

The act applies only to cities of the third class.  This class embraces all cities of a population not exceeding twelve thousand, except cities binding on the Atlantic ocean and being seaside or summer resorts.  *Rev. Sup., p.* 506.   The sole purpose of the act classifying cities, just cited, is for convenience of legislation respecting such municipalities.   Therefore, when legislation affecting one or more of the classes thereby designated comes into question, it is not sufficient to refer to the Classification act, but regard must be had to the characteristics distinguishing the class or classes affected, so that it may be determined whether, in respect to the purpose of the legisla-

tion, the classification can be justified. *Warner* v. *Hoagland,* 22 *Vroom* 62.

The argument, in support of the objection, is that, since taxes must be imposed and local improvements, necessitating assessments for damages and benefits, must be made in cities of every class, there is no distinction in the circumstance of population justifying a classification of cities for legislation on that subject.

The act in question makes no change in the mode of assessing. It only provides that the duty of assessing in all cases may be devolved upon a permanent board. Whether or not authority to create a board with such powers in any municipality should be conferred, must depend to some extent upon the amount of labor in making assessments which would be required. It is obvious that in large cities the assessment of property for taxation, and the determination of damages and benefits in cases of local improvements, would or might require more time and attention than could be bestowed by a single board. In small cities it is equally obvious that it would or might be possible and profitable to employ a single board to do all those duties.

Population does afford a distinguishing characteristic for classification of cities for legislation in appropriate cases. *Warner* v. *Hoagland, ubi supra; Randolph* v. *Wood,* 20 *Vroom* 85; *S. C.,* 21 *Id.* 175; *Mortland* v. *Christian,* 23 *Id.* 521. If such a distinuishing feature shows a fair relation between the class legislated for, and the purpose of the legislation, and in that respect segregates the class from other municipalities, the classification will not be objectionable.

The objection to the act is next put on the ground that its object is not expressed in its title as required by Const., art. IV., § 7, pl. 4.

The contention is that the title "An act to provide for a board of assessors in cities of the third class" gives no indication that it was designed to empower such board to make assessments of damages and benefits in cases of local improvements.

Officers whose duty it is to fix the valuation of property for the purpose of general taxation have been called in this state assessors. In many—perhaps most—of the municipal charters, those who determine the damages and benefits to property by reason of local improvements have been denominated commissioners of assessment. Yet there are municipal charters whereby a board of assessors is created and charged with both duties. *Pamph. L.* 1874, *p.* 331.

The functions of both classes of officers pertain to taxation—the one, to the imposition of the general and annually recurring tax; the other, to the imposition of such special taxes as arise from peculiar benefits. In performing these functions all of them alike "assess," and their work is called "assessment."

Under such circumstance, I conclude that the title in question, which declared that a *board* of assessors was to be provided, gave sufficient indication that such a board would be empowered to assess and make assessments in whatever mode, under our system of taxation, such work may be done.

The last objection is, that at the time the city of Passaic adopted the act in question it was not a city of the third class, and so was not within its operation. The act for the classification of cities above cited fixes the grade of cities of the first, second and third class by "population." How the population of any city is to be ascertained is not expressly declared. The contention is that population may be determined, like any other fact, by evidence, and that when it thus appears that a city of the third class has acquired a population exceeding twelve thousand, it must be judicially declared to be no longer a city of the third class but one of the second class.

If the question thus presented was limited to the construction of the original Classification act, I think its solution not difficult. Neither parties litigant, nor municipalities, nor courts have been empowered to make enumeration of inhabitants for the determination of population. Any attempted enumeration, not accompanied with power to inquire and to compel answers, would be a mere farce. The fact determined

in one case in one way might be determined otherwise in another case. It is inconceivable that the legislature intended to make classification depend on such uncertainties. It is apparent that " population " in this act bears the meaning of enumeration of inhabitants, and refers to such enumeration as the law provides to be made. Two such enumerations are provided for by law in each decade—one under United States authority and the other under the laws of this state.

At what period will " population," as used in the original Classification act, be fixed and determined ? The contention is that, when the bureau or officers charged with the duty of enumerating state the result, the population of the district is established and proven. But this is equally inadmissible. Such statements may be varied and altered, and manifestly the enumeration intended is not complete until it is officially promulgated. But this question has been set at rest by the supplement to the Classification act, approved April 2d, 1891 (*Pamph. L., p.* 306), which provides that a census taken under national or state authority shall be applicable to the cities in question ninety days after the official promulgation thereof. This is not only a legislative construction of the original act, but fixes the evidence of enumeration and the period at which the enumeration is to become effective.

Applying these conclusions to the facts, it is clear that the city of Passaic, when it adopted the act to provide for a board of assessors, was, within the meaning of the law, a city of the third class.

The resolution adopted by the city council on November 17th, 1890, was not an exercise of the authority conferred by that act, but the ordinance of March 19th, 1891, was. Thereupon the provisions of the act became the municipal rule, and a board of assessors was duly to be appointed. This action was taken while the only official enumeration to which appeal could be made was that of 1885, under which the population was only eight thousand three hundred and twenty-six. The official bulletin of the census of 1890 was issued April 17th, 1891. By the terms of the supplement to the Classification

act above cited (which took effect immediately) the enumeration thus promulgated became applicable ninety days thereafter.

· The city of Passaic did not become a city of the second class until ninety days after April 17th, 1891.

It is unnecessary to discuss or determine the effect of the supplement to the Classification act upon the laws applicable to a city which has passed from a lower to a higher class ; for it has not been contended that municipal officers, duly appointed under laws valid and applicable to the city while in the lower class, cease to be officers by the mere. transition of the city to the higher class. There is nothing in that or any other act to justify such a contention. Such officers obviously must continue to perform the functions and exercise the powers conferred on them until, under laws applicable to the higher class into which the city has passed, others are appointed.

The Circuit Court is advised to confirm the report of the board of assessors, notwithstanding the objections shown in the certificate.