COMMISSIONER OF HEALTH *vs.* GUSTAV BUNZEL.

Suffolk.     March 2, 1915. — April 15, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, & CARROLL, JJ.

*Municipal Corporations*, Determination of population. *Census. Slaughter House. License. Evidence*, Presumptions and burden of proof.

Under R. L. c. 75, § 100, as amended by St. 1911, c. 297, § 2, providing that "The mayor and aldermen, selectmen, or such other officers as they shall designate, or in a town having a population of more than five thousand, the board of health, if any, may annually issue licenses to carry on the business of slaughtering neat cattle, sheep or swine to applicants therefor," the question, whether the population of a certain town is more than five thousand so that a license for a slaughter house can be granted by the board of health instead of by the selectmen, must be determined by the last census taken by the Commonwealth or by the United States and in no other way.

INFORMATION IN EQUITY, filed in the Supreme Judicial Court on December 14, 1914, by the Attorney General at the relation of the commissioner of health, and on April 10, 1915, amended into a bill in equity brought by the commissioner of health, alleging that the plaintiff was appointed commissioner of health under St. 1914, c. 792, that the defendant since September 30, 1914, had been carrying on the business of slaughtering neat cattle, sheep and swine in the town of Lexington, which had by the official census for the year 1910 a population of four thousand nine hundred and eighteen and therefore was not on September 14, 1914, or when the information (now the bill) was filed, a town having a population of more than five thousand, and that the defendant had been carrying on such business without any license from the selectmen of the town of Lexington as required by R. L. c. 75, § 100, as amended by St. 1911, c. 297, § 2. There was a prayer for an injunction.

The defendant in his answer alleged that the town of Lexington since at least April 1, 1914, had been a town having a population of more than five thousand and that on September 12, 1914, he had been granted a license by the board of health of Lexington to carry on the business of slaughtering neat cattle, sheep or swine within the limits of that town for the year ending April 30, 1915.

The case was heard by *Pierce*, J. The only question raised was whether under R. L. c. 75, § 100, as amended by St. 1911, c. 297, § 2, the selectmen or the board of health of the town of Lexington had the power to grant licenses to slaughter neat cattle, sheep and swine.

The plaintiff contended that the last official census of 1910, which took effect as of April 15, 1910, and which gave Lexington a population of four thousand nine hundred and eighteen, was conclusive evidence of the population of Lexington in 1914 and until the next official census was taken.

The defendant contended that the official census of 1910 was not conclusive evidence of the population in 1914, but that he might prove the actual population by any competent evidence. He then offered to prove by one Fitzgerald, the assistant postmaster of Lexington who had made an actual count, and by the official records kept by him as assistant postmaster showing in detail and by name the inhabitants of Lexington receiving mail through the Lexington post office, such official records having been made by him in accordance with the regulations of the post office department, that, at the time of the issuing of the defendant's license, the actual population of Lexington was five thousand six hundred and twenty-six, and that at least since April 1, 1914, the actual population of Lexington was over five thousand.

The single justice ruled that the evidence offered by the defendant was incompetent and immaterial and refused to admit it. He ordered that an injunction should issue as prayed for, and at the request of the defendant reported the case for determination by the full court. If the ruling was correct, an injunction was to issue as prayed for; if it was incorrect, the bill was to be dismissed with costs.

*E. C. Stone*, for the defendant.

*J. W. Corcoran*, Assistant Attorney General, for the plaintiff.

RUGG, C. J. It is provided by R. L. c. 75, § 100, as amended by St. 1911, c. 297, § 2, that "The mayor and aldermen, selectmen, or such other officers as they shall designate, or in a town having a population of more than five thousand, the board of health, if any, may annually issue licenses to carry on the business of slaughtering neat cattle, sheep or swine." The defendant has

carried on such business under the supposed protection of a license issued by the board of health of Lexington. The jurisdiction of that board is challenged on the ground that Lexington according to the last official census taken had a population of less than five thousand. The defendant offered to show by a count made by the assistant postmaster of Lexington that the population of the town was more than five thousand in 1914. The crucial point is whether the census is the sole test for determining population for the purposes of this statute, or whether population can be proved as any ordinary fact in a proceeding in court.

The statute is silent as to the method of determining population under these circumstances. A decennial census is taken by the Commonwealth in those years divisible by five and not by ten and by the United States in those years divisible by ten, so that there is an official census every five years. There is no machinery for an authoritative count at any other times. Formerly it was provided by R. L. c. 107, § 3, that a special enumeration of the inhabitants of cities and towns should be made by the chief of the bureau of statistics of labor at any time at the request of the mayor and aldermen of a city and of the selectmen of a town. But that was repealed by St. 1908, c. 90. That is a strong indication of a legislative purpose to depend wholly upon the official figures of the latest census.

It is important that there should be a certain and easily accessible method of determining where the power to appoint rests in cases like the present. There can be no such method unless an official census is resorted to. There well may be several towns where the population is near to five thousand. If the census is not the standard, then in case of a dispute between the selectmen and the board of health or of real doubt as to which board was vested with jurisdiction, there would be no way of settling the fact decisively so as to bind everybody. The law makes no provision for a count at the expense of the town. No appropriation could be made from the town treasury for such purpose. It cannot be presumed that the Legislature intended that a matter touching the public health so nearly as the preparation of a generally used food should be liable to be thrown into litigation in large communities in successive years. Any other means of determining population than by

resort to authentic public records would open the door to great uncertainty and to the possibility or likelihood of mistake based on undue zeal, incompetence or even deceit.

Constitutional mandates compel the periodical taking of the census. Large sums of public moneys are spent to this end. The population statistics revealed by it bear the stamp of official regularity and accuracy. It is the almost universal source of reliable information as to numbers of inhabitants. A census is taken at such frequent intervals that no hardship can result from reliance upon it.

The inference is irresistible that in this matter the General Court intended that the population shown by the last State or national census must be used to determine which board has jurisdiction. Arguments as to statutory interpretation, which have been urged with force by the defendant and which might be of weight in close cases, are of slight moment in face of the overwhelming practical considerations to the contrary. Decisions upon somewhat kindred facts are to this effect. See *In re Sewer Assessment for Passaic*, 25 Vroom, 156; *Adams* v. *Elwood*, 176 N. Y. 106. No question is presented as to the census of summer residents under R. L. c. 100, § 13.

It follows that the board of health of Lexington had no jurisdiction in the premises and that the defendant ought to have made application to the selectmen. Injunction is to issue restraining the defendant from acting under the license issued by the board of health.

*So ordered.*