(No. 37612.—

THE PEOPLE OF THE STATE OF ILLINOIS *et al.*, Appellants, *vs.* WILLIAM G. KNAPP *et al.*, Appellees.

*Opinion filed May 27, 1963.*

ALBERT E. JENNER, JR., PHILIP W. TONE, and KENNETH J. BURNS, JR., all of Chicago, DAVID F. ROOT and JOHN J. BLACK, both of Morris, (FRANK H. MASTERS, State's Attorney, PAUL BRUMMUND, Corporation Counsel, and JAMES M. BARTLEY, City Attorney, all of Joliet, of counsel,) for appellants.

O'MALLEY & WEISS, of Aurora, and JOHN F. CIRRICIONE, of Joliet, (THOMAS P. O'MALLEY and LEON J. WEISS, of counsel,) for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

By this *quo warranto* action in the circuit court of Grundy County, the People of Illinois and the city of Joliet question the incorporation proceedings of the city of Crest Hill, which is contiguous with the city of Joliet on the latter's north. A trial was held, after which the court entered judgment for defendants, the city of Crest

Hill and its officials. The plaintiffs appeal directly to this court, since a franchise is involved. They contend that the county court of Will County, in which the incorporation proceedings were had, was without jurisdiction because the petition was deficient.

The record shows that on November 2, 1959, there were presented to the county clerk of Will County for filing some 18 documents, each consisting of a sheet in the form of a petition for incorporation of the territory in question as a city, together with a signature page and a blueback. They were the same except for the signature pages, one docket number being assigned to all of them. The signature pages contained varying numbers of signatures, totalling 570 in the aggregate.

Hearings were held in the county court on November 5, November 12, November 20 and November 27, 1959, at which times various objectors, including the city of Joliet, appeared in opposition to the petition. On November 27, 1959, the court entered an order upholding the petition and setting a time and place for an election on the question of incorporation. The election was accordingly held thereafter, at which the proposition carried, and on January 22, 1960, the court entered an order declaring incorporation as the city of Crest Hill. The present action was instituted on June 21, 1960, and the city of Joliet—which by ordinances subsequent to November 2, 1959, had sought to annex portions of the territory in question—joined as a party plaintiff on July 1, 1960.

At the time of the trial the purported petition, introduced by defendants as an exhibit, was in the form of one document comprised of one text page and the various signature pages, all in a single blueback. The plaintiffs argue at length that this was not proved to be the petition filed because it is not in the same form as when presented to the clerk, *i.e.* with 18 copies of the text page and 18 bluebacks, that the only petition proved to have been filed

is a three-page document consisting of the present text page and blueback together with the signature page now appearing as page 5 of the exhibit, and that the additional signature pages were not sufficiently shown to have been filed on November 2, 1959. In support of the argument they point to the testimony of three attorneys that on and shortly after November 2 they went to the county clerk's office, examined the court file and found only a single three-page petition consisting of a text page, a signature page and a cover page.

We cannot accept the plaintiffs' contention. While it does not appear when or by whom the 18 documents became consolidated, it is clear enough that the purpose was merely to reduce the bulk of the petition. The chief deputy clerk who received them for filing had since died, but his successor testified that after the filing she had been asked to make a certified copy and that the petition then consisted of a single petition having many pages of signatures. The attorney who had handled the matter identified the 18 signature sheets as being part of the material filed by him on November 2, 1959, and there is no convincing evidence to the contrary.

There is no objection to the practice of circulating identical petitions, binding them into one document, and filing them as a single petition with a total of the required number of signatures or more. (*People* v. *Summy,* 377 Ill. 255; *People ex rel. Seegren* v. *Sackett,* 351 Ill. 363; *Village of Averyville* v. *City of Peoria,* 335 Ill. 106, 120.) And where several are consolidated in the interest of brevity and compactness by eliminating mere duplicates or repetitious pages, the legal effect of the instrument is not altered. *People* v. *Howarth,* 415 Ill. 499.

In the *Howarth* case a petition for the appointment of a special prosecutor contained a large number of signatures. Twenty identical petitions had been circulated,

each consisting of three full pages of typing and a fourth page upon which some typing appeared and the remaining space was devoted to signatures. The remaining pages were signatures only. In assembling the petitions, for the sake of compactness and brevity, the first three identical pages of several petitions were removed but the signature pages were retained and incorporated in the petition filed. It was claimed that the petition was an altered instrument and that its filing deceived the court. We held otherwise, however, observing that (p. 510) "Nothing that occurred in the consolidation of these several petitions into one compact petition changed the legal significance of the petition as signed. No allegation, statement, prayer, sentence or phrase was changed in any manner. Only the physical appearance was altered. It has been held in Illinois that where the legal effect is not changed the instrument is not altered, although some change may be made in its appearance. To effect an alteration the change must be material." The same language is applicable in the case at bar, where there is no proof whatever that any material change was made in the petition itself.

It further appears that at the first hearing, held on November 5, 1959, a number of objections were raised and the people from the area became concerned that their case might be dismissed. The attorney then prepared an original and carbon copy of another petition, identical in wording with the one filed November 2, which he caused to be circulated for signatures and filed with the clerk on November 12. The plaintiffs now urge that there is nothing to show which of the petitions was considered and acted upon by the county court when it entered the order of November 27, that the November 12 petition superseded and showed an abandonment of whatever had been filed prior to that time, and that since in the interval the city of Joliet had annexed parts of the territory described there-

in there was a failure to comply with the provision that the territory be "not already included within the corporate limits of any municipality."

There is no merit in plaintiffs' position. The mere filing of additional copies of the petition on November 12 did not operate as an abandonment of the original filing on November 2, and the territory sought to be annexed to Joliet in the interim was not brought within its corporate limits. The November 2 petition for organization of the city of Crest Hill was filed prior to the attempted annexation proceedings, and the law is clear that no proceeding for the annexation of a territory, or a part thereof, to any other municipality may be legally initiated after a petition for the organization of such territory into a city has been filed unless such organization is defeated. *City of East St. Louis* v. *Touchette,* 14 Ill.2d 243.

The plaintiffs further contend that the petition was fatally defective because the description of the territory included a small piece which was within the city limits of Joliet. It is undisputed that there was an overlap to the extent of a strip six or seven feet wide and about 250 feet long. The strip was inadvertently included because it had formed part of a tract formerly annexed to Joliet and thereafter disconnected by a description which, by mistake, failed to include the strip in question. It further appears that the village of Crest Hill by ordinance has expressly disclaimed any jurisdiction over the area overlapped.

We do not think the mere fact that this small sliver of land was inadvertently included is enough to invalidate the incorporation proceedings. While the statute contemplates that the territory to be incorporated will not be already incorporated, it does not require either expressly or by necessary implication the result sought by the plaintiffs in this case. It deals with practical matters and must be given a practical, common-sense construction. The strip in question lies wholly within and is a part of a public thoroughfare

which will be used by the general public indiscriminately with the balance of the street. Under these circumstances the overlap is *de minimus* and will not be considered.

It is finally argued that the description of the territory to be incorporated was not definite as required by the statute, because the term "Chicago Drainage Canal," used to designate its eastern boundary, is misleading. The name is misleading, according to the plaintiffs' argument, because there are two canals in addition to the Des Plaines River running north and south through the general area. lt appears that the river is the most westerly, and is joined by the most westerly of the two canals about midway through section 34 (which is included in the proposed territory except the part lying east of the "Chicago Drainage Canal.") From the confluence the two constitute a single waterway south across the southern boundary of the section. The more easterly of the two canals extends through the section without joining either the river or the more westerly canal or the single waterway formed by them. Its correct name is the Illinois-Michigan Canal. The defendants' evidence showed that the more westerly canal was named the "Chicago Drainage Canal" at least to the north of the area in question. Other witnesses testified that the official or correct name is the "Chicago Sanitary and Ship Canal," and that south of the junction with the river the waterway is simply called the "Illinois Waterway" or the "Des Plaines River." Plaintiffs argue that the description in the petition for incorporation is incomplete because even if the "Chicago Drainage Canal" is the correct name, that canal empties into the Des Plaines River and terminates a substantial distance north of the south boundary of the area described.

We cannot agree that use of the name "Chicago Drainage Canal" rendered the description indefinite. It is apparent from the evidence that the intended boundary extends south from the junction to the boundary of the sec-

tion, along the single waterway, and that the description was not misleading. Where, as here, the area to be incorporated and the boundary lines enclosing it are readily ascertainable by a reading of the whole description, the petition is sufficient to confer jurisdiction on the county court even if the description erroneously failed to enclose the area sought to be incorporated. (*People ex rel. Magnuson* v. *Kramer*, 21 Ill.2d 392.) A fair reading of the boundary description in question here does not disclose any such failure. Descriptions of municipal boundaries are not construed with the same strictness as are those contained in deeds and contracts, and if the description in a petition to incorporate fairly apprises the public of the property involved, it will be considered sufficient. *People ex rel. Village of Worth* v. *Ihde*, 23 Ill.2d 63.

We have considered all of plaintiffs' contentions and arguments and find that none has shown any error. Upon this record the trial court was fully warranted in finding the issues for defendants, and the judgment is accordingly affirmed.

*Judgment affirmed.*