THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ELIZABETH P. WALKER *et al.,* Defendants-Appellees.

Second District   No. 76-442

Opinion filed March 20, 1978.—Supplemental opinion filed on denial of rehearing May 18, 1978.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Robert F. Casey, of Geneva, and Gerald M. Sheridan, Jr., of Wheaton, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The People of the State of Illinois, represented by the State's Attorney of Du Page County, sued in quo warranto (Ill. Rev. Stat. 1975, ch. 112, par. 10) to oust seven commissioners of the Fox Valley Community

Airport Authority. Following extensive hearings the trial court dismissed the complaint and the People appeal.

On March 18, 1974, a petition was presented to the Circuit Court of Kane County praying that an election be held on the question of whether an airport authority should be established in territory partially situated in Kane County and partially in Du Page County, to be named the Fox Valley Community Airport Authority (hereinafter, Airport Authority). The petition was signed by the required number of electors residing in the proposed territory. At a public hearing held on April 5, 1974, on the proposed election to form the Airport Authority, the only objectors were the State's Attorney representing the County of Du Page, Gerald R. Weeks, the chairman of the Du Page County Board, and Noreen Fredericks, chairwoman of the Du Page County Public Works Committee. The court set June 25, 1974, as the date for a special election. On May 2, 1974, the court, in denying a motion by the County of Du Page to cancel the election, specifically found that (1) the County of Du Page was not a municipal corporation within the intendment of the municipal airport authorities act (Ill. Rev. Stat. 1975, ch. 15½, par. 68.1 *et seq*; hereinafter the Act); and (2) that, in any event, the county's population as indicated by the 1970 Federal census was only 491,882 with the result that Du Page County was not a county of 500,000 or more whose territory could not be included within the boundaries of an airport authority.

The election resulted in 4,216 votes being cast in favor of establishing the Airport Authority and 1,734 opposed. On July 16, 1974, commissioners of the new Airport Authority were appointed; and thereafter on July 24, 1974, the quo warranto action was filed.

The defendants filed a motion to dismiss the proceedings on the grounds that the Circuit Court of Du Page County did not have jurisdiction over the subject matter and that venue was not properly placed in Du Page County. The Court denied defendants' motion to dismiss. (Defendants have not cross-appealed.) Defendants thereupon answered; and the People replied contending, as they do in this court, that the purported incorporation of the Airport Authority was invalid for the following reasons: the County of Du Page was, on March 18, 1974, a municipal corporation with a population of 500,000 or more which owned and operated an airport; the territory of the Airport Authority embraces part of the Enrico Fermi National Accelerator Laboratory owned by the United States Atomic Energy Commission; the notice of election incorrectly described the proposed Airport Authority's territory; and, finally, because the Act is unconstitutional. The People subsequently amended their reply and charged that the incorporation was invalid because part of the Village of Wayne, a municipality, was included and

part excluded from the territory of the Airport Authority. The court found that all seven defendants lawfully hold the office of commissioner of the Airport Authority and dismissed the quo warranto petition.

The meaning and effect of the municipal airport authorities act is placed in issue by the appeal. The People first contend that a county, and in particular Du Page County, is included in the term "municipal corporation" as that term appears in section 2 of the Act which provides:

> "Creation of an Airport Authority. Any area of contiguous territory having a population of not less than five thousand and containing one or more municipalities as defined by this Act, and in which there is not included any territory contained within the corporate limits of an existing Airport Authority, and *in which there is not included any territory or airport facilities of a municipal corporation having a population of five hundred thousand or more which owns, maintains, or operates an airport* or airports within or without its corporate limits, may be incorporated as an Airport Authority in the manner provided in this Act." Emphasis added. (Ill. Rev. Stat. 1975, ch. 15½, par. 68.2.)

We agree with the People's argument that Du Page County is a "municipal corporation" as that term is used in the Act and disagree with the trial court's conclusion that it was not.

The answer to the question whether a county is included as a "municipal corporation" under the Act cannot clearly be found by express definition under the Act. Section 1 of the Act, "Definitions" (Ill. Rev. Stat. 1975, ch. 15½, par. 68.1) states:

> " 'Municipality' means any city, village or incorporated town of the State of Illinois."

However, the section does not specifically define a "municipal corporation." It does contain a definition of a "Public Agency" as meaning:

> "* * * any political subdivision, public corporation, quasi-municipal corporation or municipal corporation of the State of Illinois, excepting public corporations or agencies owning, operating or maintaining a college or university with funds of the State of Illinois." Ill. Rev. Stat. 1975, ch. 15½, par. 68.1.

The defendants contend that the use of both "municipal corporation" and "quasi-municipal corporation" in the definition of a "public agency" indicates a legislative intent to classify counties as quasi-municipal corporations since, defendants argue, otherwise the use of both terms would be superfluous. We find little merit in this argument. The definition in its entirety reveals an overabundance of caution by the legislature. If the legislature intended to use terms in a precise fashion, it could have left

out either "quasi-municipal corporation" or "municipal corporation" or both, since the phrase "public corporation," which precedes these terms, embraces both.

Since we do not find the phrase "municipal corporation" to be a precise term, the true intent and meaning of the legislature must be ascertained by considering the entire statute, subsequent amendments and also "the evil to be remedied and the object to be attained." See, *e.g., People v. Bratcher*, 63 Ill. 2d 534, 543 (1976).

The reference to municipal corporations having a population of 500,000 or more was added to the Act as of February 11, 1959. From surrounding circumstances and from "the historical designation of counties as quasi-municipal corporations" defendants argue that the legislature did not intend that counties be considered as municipal corporations within the meaning of section 2. They argue that the questioned language (municipal corporations having a population of 500,000 or more) was added because the legislature desired to protect only O'Hare Field, Midway Airport and Meigs Field, all of which were operated by the City of Chicago, from expropriation by an airport authority. Neither argument is persuasive. At the time the reference to "municipal corporations" was added to the Act in 1959, numerous public entities were entitled to operate public airports, including cities, villages and incorporated towns (Ill. Rev. Stat. 1975, ch. 24, par. 11—101—1 et seq.); counties (Ill. Rev. Stat. 1975, ch. 15½, par. 69); park districts (Ill. Rev. Stat. 1975, ch. 105, par. 9—2); port districts (Ill. Rev. Stat. 1975, ch. 19); airport authorities (Ill. Rev. Stat. 1975, ch. 15½, par. 68.1) and the Board of Trustees of the University of Illinois (Ill. Rev. Stat. 1975, ch. 144, par. 78a). It seems obvious that if the legislature had desired only to protect the airports operated by the City of Chicago it could have accomplished its end by using the term "municipality" instead of the broader term "municipal corporation" which imports an intention to protect public airports operated by public entities other than cities, villages and incorporated towns. Assuming that the population of the district of any public entity is at least 500,000 there seems to be no logical basis for protecting it from expropriation and not protecting a county with the same population.

Nor do we agree that there is any present practical basis for the distinction which the defendants seek to make. Even though counties were once regarded as mere political subdivisions of the State possessing few corporate functions (see, *e.g., Scates v. King*, 110 Ill. 456, 466 (1883); *Woodmen of World Life Insurance Society v. County of Cook*, 322 Ill. App. 112, 117-18 (1944)) counties have since entered into corporate functions of all kinds. These include the maintenance of hospitals, sanatoriums and, of course, airports to mention only a few. The courts

have also defined counties as "municipal corporations." In *Skil Corp. v. Korzen*, 32 Ill. 2d 249, 250 (1965), the supreme court stated:

> "The term 'municipal corporation' includes counties. *Perkins v. Board of County Commissioners of Cook County*, 271 Ill. 449, 459."

■■ We therefore conclude that the phrase "municipal corporation" as used in the Act includes counties since we find no reasonable indication of a contrary legislative intent.

Therefore, if there had been proof that Du Page County at the time in question had a population of 500,000 or more it would, in our view, have been entitled to oust the commissioners who sought to operate an airport authority in the territory which included Du Page County. However, we find no such proof in the record.

In the quo warranto proceedings the only evidence offered as to the population of Du Page County was contained in a joint exhibit which included the finding in the order denying the petition to vacate the election:

> "The Court has taken judicial notice that the 1970 Federal Census population statistics show the population of Du Page County to be 491,882."

No other or further evidence of the population of Du Page County was offered in the quo warranto proceedings in spite of the fact that the judge after deciding that the County of Du Page was not a municipal corporation indicated that other evidence of population besides the census would, in his opinion, be relevant.

Section 2.4 of the Act (Ill. Rev. Stat. 1975, ch. 15½, par. 68.2d) provides:

> "In determining the population of the territory, or of any included municipality, the last federal, State or municipal census for the territory or municipality shall be used, and the population of that part of the territory for which no separate census previously had been taken may be determined by a census taken under the direction and supervision of the circuit court at any time prior to the entry of the order determining and declaring the result of the election, or may be established by other competent evidence."

This section was part of the original act, enacted on April 4, 1945. It was not amended, in 1959, when the reference to a "municipal corporation" was added to section 2 of the Act.

The People argue that section 2.4 refers only to the "municipality" which is defined in section 1 of the Act as a city, village or incorporated town and therefore excludes counties. It appears more likely, however, that, when the legislature added the provision to exclude a municipal corporation over 500,000 to section 2 of the Act, its failure to conform

section 2.4 was an inadvertent omission and the missing term "municipal corporation" may be supplied. (See *People v. Hudson*, 46 Ill. 2d 177, 181-82 (1970); *People ex rel. Cason v. Ring*, 41 Ill. 2d 305, 312-16 (1968).) Further, if statutes in *pari materia* are considered in ascertaining the legislative intent (see *Illinois-Indiana Cable Television Association v. Illinois Commerce Com.*, 55 Ill. 2d 205, 220 (1973)), it will be seen that, where population must be determined under a statute, it is evidenced by the number of inhabitants as determined by the last preceding Federal census where not otherwise specified. See Ill. Rev. Stat. 1975, ch. 53, par. 30 (fees and salaries); Ill. Rev. Stat. 1975, ch. 42, par. 386a (drainage); Ill. Rev. Stat. 1975, ch. 34, par. 831c (reapportionment of counties); Ill. Rev. Stat. 1975, ch. 34, par. 2012.5 (county auditing).

We need not decide this question on the basis of statutory construction, however, since judicial precedent also adheres to the view that, where the exercise of governmental powers is dependent on population, a court is precluded from taking judicial notice of evidence other than that of an official census. See *Supervisors of the County of Boone v. Village of Rainbow Gardens*, 14 Ill. 2d 504, 511 (1958), where the supreme court noted:

> "Although the statute prescribes that the Federal census (regular or special) shall be conclusive evidence of population, that is the standard which the courts themselves have deemed determinative, and of which they have taken judicial notice, even if not prescribed by any statute. In fact, there does not appear to be any case in Illinois, or in any other jurisdiction where the courts have allowed such census figures to be contradicted by evidence of population submitted by experts or interested parties, as respondent urges in the case at bar. * * *

> Furthermore, this provision that the Federal census shall be conclusive evidence of population is founded not only in established practice in Illinois and other jurisdictions (14 C.J.S. 103), but in reason and sound public policy. If the correctness of the population figures in the Federal census, regular or special, could be challenged by interested persons with diverse tabulations of the actual population, statutes applicable to municipalities with designated populations could never be enforced, and chaos in the law would result."

(See also *People ex rel. Nicholson v. Board of Trustees*, 281 Ill. App. 394, 403 (1935).) The People's reliance on *Coal Creek Drainage District v. Sanitary District*, 336 Ill. 11 (1929), is misplaced. In *Coal Creek*, the supreme court expressly held that while it would take judicial notice of the population of various civil divisions of the State, such as counties, it would do so "as shown by official census reports"; but that it could not

take judicial notice of the population of a sanitary or other district not shown by any official census. (336 Ill. 11, 26.) Of course, where there is no available official census, population may be shown by any competent evidence, and in fact section 2.4 of the Act expressly so states.

■■ The People's request that we take judicial notice of the fact that Du Page County in 1974 had a population of over 500,000 thereby recognizing a growth rate in the period following the 1970 census is therefore not well founded. In the alternative the People have asked that we remand for a further hearing on this issue. However, they did not offer any proof in the trial court even though the record discloses that they were not prevented from doing so. Thus, in any event, they may not now retry their case on this issue. See, *e.g., H. J. Tobler Trucking Co. v. Industrial Com.*, 37 Ill. 2d 341, 344 (1967).

■■ The People next argue, citing *People ex rel. Curtin v. Heizer*, 36 Ill. 2d 438 (1967), that the Airport Authority was unlawfully created because it included property over which it could not exercise authority. The Enrico Fermi National Accelerator Laboratory lies partly within the boundaries of the Airport Authority. The Laboratory is owned by the United States Atomic Energy Commission and was acquired by the Commission with the consent of the Illinois Legislature. (See Ill. Rev. Stat. 1975, ch. 127, par. 47.21. See also *Department of Business & Economic Development v. Pioneer Trust & Savings Bank*, 15 Ill. App. 3d 269, 275 (1973).) The People base their argument on article I, section 8 of the United States Constitution which in substance provides that the Congress shall have power to exercise exclusive legislation and authority over all places purchased with the consent of a State. However, we cannot agree that the inclusion of a small portion of the 6500-acre National Accelerator Laboratory site on its northerly and westerly edges within the Airport Authority territory vitiated the incorporation proceedings. The question is not who may exercise jurisdiction in the particular portion of the territory but rather whether the land described remains a contiguous part of the territory under section 2 of the Act. A case on point is *Howard v. Commissioners of Sinking Fund*, 344 U.S. 624, 97 L. Ed. 617, 73 S. Ct. 465, 467 (1953). In *Howard*, the annexation by the City of Louisville of federally owned land on which a Naval Ordnance Plant was located was challenged. The United States Supreme Court rejected the argument that the annexation was invalid because the land on which the plant was located had been acquired by the United States with the consent of the Kentucky Legislature and explained,

> "When the United States, with the consent of Kentucky, acquired the property upon which the Ordnance Plant is located, the property did not cease to be a part of Kentucky. The geographical structure of Kentucky remained the same. In rearranging the

structural divisions of the Commonwealth, in accordance with the state law, the area became a part of the City of Louisville, just as it remained a part of the County of Jefferson and the Commonwealth of Kentucky. A state may conform its municipal structures to its own plan, so long as the state does not interfere with the exercise of jurisdiction within the federal area by the United States. Kentucky's consent to this acquisition gave the United States power to exercise exclusive jurisdiction within the area. A change of municipal boundaries did not interfere in the least with the jurisdiction of the United States within the area or with its use or disposition of the property. The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, * * *." (344 U.S. 624, 626-27, 97 L. Ed. 617, 620-21, 73 S. Ct. 465, 467.)

Similarly here, the State through its airport authority was not prevented from exercising its power to rearrange its boundaries since there was no interference with the jurisdiction asserted by the Federal Government. See also *Flynn v. Stevenson*, 4 Ill. App. 3d 458, 460 (1972).

■■ The People also argue that there were jurisdictional defects in the form of the notice of election and that there was a failure to comply with the statute as to the description of property to be included in the territory. The surveyor's description of the boundaries of the proposed Airport Authority was filed with the Clerk of the Circuit Court of Kane County on March 18, 1974. After the petition was filed, the surveyor discovered that the Village of Wayne which, it was thought, lay entirely within the boundaries of the proposed airport authority, had annexed two contiguous parcels of real estate on December 28, 1973, although the record of annexation had not been filed by the village until March 7, 1974. The parcels of land so annexed included what is known as the Paciunas property. The northern half of the Paciunas property falls outside the original boundaries of the Airport Authority but the southern half of the property upon which the residence is located is within the Airport Authority's original boundaries. The northern half of the property is apparently uninhabited and consists of fields and a horse exercise track. The annexation also included a small sliver of land at the northern edge of land referred to as the Holty property. This small portion lies outside the original territory of the proposed authority. On April 5, 1974, at the public hearing on the proposed Airport Authority, the boundaries of the Authority were amended so as to include the omitted parcels. For some unexplained reason the notice of election did not contain the legal description of the two recently annexed parcels. However, a map accompanied each of the posted notices and the published notices referred to the map which showed the two added parcels of land as lying

within the proposed Authority's boundaries. It appears that the territory originally omitted amounts to approximately 6 acres out of a total territory of some 42,000 acres. The People argue that the inadvertent omission of these two parcels from the several notices of election vitiates the entire incorporation proceedings. We cannot agree.

In *People v. Knapp*, 28 Ill. 2d 239 (1963), the plaintiff in quo warranto sought to invalidate the incorporation of the City of Crest Hill on the grounds that the legal description was not complete. In rejecting this argument the supreme court stated,

> "Descriptions of municipal boundaries are not construed with the same strictness as are those contained in deeds and contracts, and if the description in a petition to incorporate fairly apprises the public of the property involved, it will be considered sufficient." (28 Ill. 2d 239, 246.)

In *People ex rel. Village of Worth v. Ihde*, 23 Ill. 2d 63 (1961), cited in *Knapp*, the court also held that minor errors in the legal description did not vitiate an incorporation, stating,

> "Descriptions of municipal boundaries are not construed with the same strictness as those contained in deeds and contracts (*Dowsett v. City of East Moline*, 8 Ill. 2d 560,) and if the incorporating petition and accompanying map, when viewed together, fairly apprise the public of the property involved, the description will be considered proper. (*People ex rel. Cameron v. New*, 214 Ill. 287.) The legal description contained in the petition was also set forth in the notice of election, the incorporation ballots, and the order canvassing votes, and was not at such variance with the map illustration as to cause public misapprehension upon the point. Similarly, since only one of the two West 112th streets appeared upon the attached map, any uncertainty in this respect was thereby cured." 23 Ill. 2d 63, 66.

In the case before us an accurate map accompanied the legal description in the posted notices of election and the published notices referred to the map showing precinct divisions and boundaries. The legal description when read together with the relevant map fairly apprised the public of the territory involved. In any event the errors in description were "de minimus" and insufficient to destroy the incorporation. See *People v. Knapp*, 28 Ill. 2d 239, 245 (1963).

The People rely principally on *People ex rel. Bulpitt v. Buesinger*, 324 Ill. 534 (1927), holding that the notice of an election for incorporation is jurisdictional and that the lack of a proper notice voids the election. In *Buesinger*, the notice described territory which included approximately four sections of land which were already included in another high school district. The court held that "this was a material defect in the notice and

the election held pursuant to it was void." (324 Ill. 534, 537.) Of course, it could not be said that the description in that petition fairly apprised the public of the property involved because of the extent of the defect. The case is clearly distinguishable from the one before us.

Arising from the same original error in not including the portions of the Paciunas and Holty properties, the People argue that the fact that the Act permits the amendment which was made at the public hearing without further notice shows that it is unconstitutional. They argue that to permit the petitioners to amend at the public hearing without further notice when it appears that only part of a municipality is included in the territory denies a property owner, whose land is included as a consequence of such an amendment, the right to be heard and it is therefore an unconstitutional denial of due process. They refer to section 2.2 of the Act (Ill. Rev. Stat. 1975, ch. 15½, par. 68.2b) which states, in part:

> "Should it appear on such public hearing that a part only of any municipality is included within the territory described in the petition, then such petition shall be amended upon motion of the petitioners, by their representatives, to either include or exclude all of such municipality, *and such motion shall be allowed.* Upon such public hearing the petitioners, by their representatives, may also move to otherwise amend their petition or to dismiss or to withdraw the petition, *and any such motion shall be allowed.*" (*Emphasis added.*)

■■ It is, of course, true that where the residents of a locality by petition cause a district to be created, the boundaries of which are determined by petitioners themselves rather than by legislative action, due process requires that all landowners in the area be given notice of the proposed incorporation and an opportunity to be heard. (See *Embree v. Kansas City & Liberty Boulevard Road District*, 240 U.S. 242, 60 L. Ed. 624, 36 S. Ct. 317, 319 (1916). See also *Browning v. Hooper*, 269 U.S. 396, 405, 70 L. Ed. 330, 46 S. Ct. 141, 143 (1926), and *Chesebro v. Los Angeles County Flood Control District*, 306 U.S. 459, 83 L. Ed. 921, 59 S. Ct. 622, 625 (1939). See also *People ex rel. Hanrahan v. Caliendo*, 50 Ill. 2d 72, 80-81 (1971).) However, it is also clear that a court will not consider the validity of a statutory provision at the instance of one who is not directly affected "unless the unconstitutional feature is so pervasive as to render the entire Act invalid." *People v. Palkes*, 52 Ill. 2d 472, 480-81 (1972).

■■ Here, no constitutional challenge was made to any other provision of the Act which, further, has a severability clause providing that the invalidity of any provision shall not affect other provisions (Ill. Rev. Stat. 1975, ch. 15½, par. 68.20). In this case no one was aggrieved by the operation of the provision in question, since no one resided on the portions of the land affected and, in fact, the owners of the parcels had been given notice that at least part of their land would be included. Under

these circumstances we do not consider the validity of the statutory provision.

The People also claim that the petition is jurisdictionally defective because it includes Lot 1 of Dunham's Inc. Assessment Plat No. 3 which they allege was annexed to the municipality of Wayne, but was not included in the proposed Airport Authority, in violation of section 2.1 of the Act (Ill. Rev. Stat. 1975, ch. 15½, par. 68.2a). The State's Attorney argues that the court erred in ruling summarily in favor of the defendants based on their pleadings, plats, affidavits and other documents to support their allegation that the lot in question was never validly annexed because no one had petitioned for its annexation.

The record shows that on July 19, 1973, Wallace J. Dickey and Jayne Dickey, his wife, petitioned for the annexation of property, which they owned, to the Village of Wayne. Their property consisted of Lot 2 and the southern half of Lot 3 of Dunham's Inc. Assessment Plat No. 3. On March 30, 1973, Jean Holty petitioned for the annexation of her property consisting of the northern half of Lot 3 of Dunham's Plat. The annexation ordinance, passed on December 28, 1973, by reason of clerical error incorporated Lots 1 and 3 instead of Lots 2 and 3 of Dunham's Plat, although the plat of annexation correctly showed the areas to be annexed as Lots 2 and 3. The village trustees discovered their error and passed a new ordinance on July 24, 1974, declaring the previous ordinance to be null and void and annexing the correct territory.

The People contend that the earlier ordinance was effective in annexing Lot 1 of Dunham's Plat to the Village of Wayne and that since the lot was not included in the Airport Authority's boundaries this resulted in part of the village lying outside the Airport Authority's territory and part within which violated section 2.2 of the Act (Ill. Rev. Stat. 1975, ch. 15½, par. 68.2b))[1] and that, therefore, the incorporation proceedings were a nullity. The People further contend that even if the December 28, 1973, annexation was void, the defendants cannot raise that point in quo warranto proceedings against anyone except the Village of Wayne and that they are also barred by the one-year statute of limitations against contesting directly or indirectly the annexation of any territory to a municipality (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—46).

■■ We agree that the general rule is that the validity of a municipal annexation can only be attacked directly. (See, *e.g., Village of Bridgeview v. City of Hickory Hills,* 1 Ill. App. 3d 931, 933-34 (1971).) The general rule, however, does not apply where an incorporation or annexation is void from its inception and where there has not been a good faith user or exercise of governmental powers over the territory purportedly incorporated or annexed. (See *People ex rel. Johnson v. City*

[1] As relevant section 2.2 states, "A petition shall not be sufficient ° ° ° if a whole municipality is not included within the territory. ° ° °"

*of Waukegan,* 35 Ill. App. 3d 713, 718-19 (1976).) Further, the defendants are not time-barred from raising the defense of a void annexation of Lot 1 of Dunham's Plat in this quo warranto proceeding. The one year limitation does not apply to challenges based upon want of jurisdiction. *People ex rel. City of Des Plaines v. Village of Mt. Prospect,* 29 Ill. App. 3d 807, 814 (1975); *People ex rel. Village of Northbrook v. Highland Park,* 35 Ill. App. 3d 435, 440 (1976).

■■ It is clear that the Village of Wayne had no power to annex Lot 1 without a petition signed by the owners of record as required by statute. (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8). We have held this provision to be jurisdictional. (*In re Annexation to the Village of North Barrington v. Village of Lake Barrington,* 8 Ill. App. 3d 50, 51 (1972).) The Village, of course, recognized this when it declared the ordinance "void ab initio" upon learning of the mistaken attempt to annex the lot. We conclude that the matter of the validity of the annexation of Lot 1 of Dunham's Plat was properly before the trial court and it is properly before us; that the attempted annexation of the Village of Wayne was void from its inception and the Village of Wayne at no time sought to exercise jurisdiction over Lot 1; and that therefore no municipality lies partly within and partly without the territory of the Airport Authority.

We therefore affirm the judgment of the trial court.

Affirmed.

BOYLE and NASH, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The People, in their petition for rehearing, point out that the trial court ruled on the issue of the admissibility of noncensus evidence as one of several "issues which may be decided prior to trial on the merits"; this issue was thus resolved apart from the submission of evidence and before the commencement of trial; hence, the People cannot be faulted for not making an offer of proof as to population in the trial court.

The People, however, did not advert, in their principal brief, to the peculiar posture of this cause at the time of the ruling on the admissibility of noncensus evidence; and, in oral argument before the appellate court, the People were unable to answer the court's inquiry as to why an offer of proof as to population had not been made in the circuit court; nevertheless, we reach the merits of the People's objection.

### A.

In the principal opinion, we held that where the exercise of

governmental powers is dependent on population, a court should limit the evidence to official enumerations. The reasons for so holding are, briefly stated, as follows: First, the public policy of the State, as reflected in many enactments of the General Assembly, makes the latest official enumeration of the population of a district dispositive, where a certain population level is a predicate to the exercise of some governmental power. (See principal opinion for the citations of several of these enactments.) Also, this is the rule established by Illinois common law. (See *Supervisors v. Rainbow Gardens*, 14 Ill. 2d 504, 510-11 (1958); *People ex rel. Nicholson v. Board of Trustees*, 281 Ill. App. 394, 402 (1935); *People ex rel. Trapp v. Tanner*, 10 Ill. App. 2d 155, 159 (1956).) Further, most foreign jurisdictions that have considered this issue have reached the same result. See, *e.g.*, *Town of Maysville v. Smith*, 132 Ga. 316, 64 S.E. 131 (1909); *State ex rel. Clark v. Board of Education*, 148 Kan. 632, 636, 84 P.2d 507, 509 (1938); *In re City of Passaic*, 54 N.J.L. 156, 161, 23 A. 517, 518 (1891); *Adams v. Elwood*, 176 N.Y. 106, 110, 68 N.E. 126, 127 (1903); *Commonwealth v. Walter*, 274 Pa. 553, 557, 118 A. 510, 512 (1922); *State ex rel. Williams v. Brooks*, 58 Wash. 648, 653, 109 P. 211, 213 (1910).

In the principal opinion, we also noted that the failure of the General Assembly to add the words "municipal corporation" to section 2.4 of the municipal airport authorities act, which provides the method for determining population (Ill. Rev. Stat. 1975, ch. 15½, par. 68.2d), appeared to be the result of legislative inadvertence and that the "missing term 'municipal corporation' may be supplied." This aspect of the principal opinion states yet another reason for limiting the admissibility of population evidence in the instant case to official enumerations.

B.

The record, here, indicates that the 1970 Federal census showed the population of Du Page County to be but 491,882; the People appear to concede that the record correctly reflects the 1970 census report; further, the People's principal and reply briefs and petition for rehearing, fairly read, indicate that the People pray for a remand on the issue of population so that they can attempt to prove the population of the County of Du Page, as of the crucial date in 1974, by the testimony of demographers, geographers and related evidence. Nowhere do the People suggest that they intend to controvert the 1970 census by some other official enumeration, made after the decennial tabulation but before the critical date in 1974.

Hence, it appears that the evidence the People would introduce, on remand, on the population issue is manifestly incompetent with respect to that issue; consequently, a remand on this issue, under the circumstances of this case, would be pointless. We therefore deny the petition for rehearing.